### UNITED STATES *v.* JONES.

### UNITED STATES *v.* TAUBENHEIMER.

### UNITED STATES *v.* MONTGOMERY.

APPEALS FROM THE CIRCUIT COURT OF THE UNITED STATES FOR
THE DISTRICT OF OREGON.

Nos. 1103, 1102, 1482. Argued January 28, 29, 1889. Decided May 13, 1889.

The act of March 3, 1887, "to provide for the bringing of suits against the
government of the United States," 24 Stat. 505, c. 359, does not confer
upon the District or Circuit Courts of the United States, or upon the
Court of Claims, jurisdiction in equity to compel the issue and delivery
of a patent for public land.

THESE cases were suits in equity brought against the United
States under the recent act of March 3d, 1887, 24 Stat. 505,
c. 359, extending the jurisdiction of claims against the govern-
ment to the District and Circuit Courts of the United States.
They were suits for specific performance, seeking to compel
the United States to issue and deliver to the plaintiffs respec-
tively patents for timber land, alleged to have been taken up
and purchased by them under the act for the sale of timber
lands in the States of California, Oregon, etc., passed June 3d,
1878, 20 Stat. 89, c. 151.[1] The petitions contained averments

---

[1] The material parts of this statute will be found in the opinion of the
court, *post*, 15, 16.

of performance of the conditions required by said act, the pay-
ment of the price of the lands to the receiver of the land office,
the giving of his certificates and receipts therefor, and the
refusal of the government to issue patents to the petitioners
as entitled thereto. They prayed, in each case, for a decree,
1st, that the petitioner is owner of the land by virtue of the
purchase; and, 2d, that the United States issue and deliver, or
cause to be issued and delivered, in accordance with law, a
patent granting and conveying the land purchased. The
United States by its attorney demurred to the several peti-
tions. The Circuit Court overruled the demurrers and
rendered decrees for the plaintiffs. From these decrees the
present appeals were taken.

*Mr. Assistant Attorney General Howard* for plaintiff in
error.

*Mr. James K. Kelly* for Jones, defendant in error.

*Mr. James C. Carter* for Jones, defendant in error.

Jurisdiction to hear and determine a claim for a conveyance
of public land was conferred upon the court below by the act
of March 3d, 1887, in the plainest terms. No ground is left
for construction or doubt. (1) The claim is upon a contract
with the government of the United States. (2) It is a claim
in respect of which the petitioner would be entitled to redress
against the United States in a court of equity if the United
States were suable. Nothing remained to be done by the pur-
chaser, nor by the government, except the performance by the
latter of the duty, wholly ministerial, of executing and deliv-
ering the patent. (3) No claim can be imagined which falls
more completely within the class described in the act over
which jurisdiction to hear and determine is conferred upon the
courts therein named.

It would be to no purpose to say that this act should be
strictly construed. As already observed, no case for interpre-
tation is presented; and no rule, even of the most rigid con-

struction, would suffice to exclude this claim from the class of cases over which jurisdiction is conferred.

Whoever undertakes to exclude this claim from the class defined by the act must start with an assumption as broad as the following, namely: That the proposition that a court should be permitted to hear and determine a claim against the United States for equitable relief, such as the execution of a conveyance of lands, is of such an extraordinary character, and so doubtful in point of expediency, that Congress must be presumed not to have authorized such action by any *general* language, however clearly that language may embrace it, and that the authority can be held to have been given only when conferred by express language *specifically* describing such relief. It is respectfully submitted that such an assumption would be an error too gross for any indulgence.

On the contrary, the just method of treating this act is to view it as one calling (if that were at all necessary) for a liberal interpretation.

An obvious distinction should be noticed between declaring justice and enforcing it. In suits between private persons both these functions are discharged by the court, but the first only is its true and proper one. The second is an executive or administrative office, being the exercise of mere power, and might well enough be performed by independent officers. Reasons of convenience have led to the placing of such officers under the authority of the court. "The judiciary has no influence over either the sword or the purse; no direction either of the strength or the wealth of society; and can take no active resolution whatever. It may truly be said to have neither force nor will, but merely judgment, and must ultimately depend upon the aid of the executive arm for the efficacious exercise even of its judgments." The Federalist, No. 78 (Hamilton); Story Const., § 1600.

The circumstance that these two functions have, in the practice of governments, been intrusted to the same hands has led to the rule, in cases between individuals, that a court will not assume jurisdiction where it has not the power to enforce its decrees. The offices of declaring and enforcing justice are

thus further tied together, but this is not in consequence of any inherent difficulty in an independent discharge of the function of declaring justice.

In the case of the sovereign, whether under democratic or monarchical rule, justice cannot be enforced against him, "for who shall command the king ? "  And there is precisely the same difficulty in commanding the head of a democratic State.  The freedom of his person and action is essential to the existence of the State.  No compulsion can be employed against him, except to depose him and seat another in his place.  The same reasons go far towards precluding the exercise of force at the instance of a citizen, to compel the principal officers of State to submit to the compulsion of a court.  The immortal judgment of Marshall in *Marbury* v. *Madison*, 1 Cranch, 137, stopped with the declaration that a writ of *mandamus* might go against a cabinet officer to compel the performance of a mere *ministerial* duty imposed by law.

It follows as a consequence that whenever the citizen seeks redress for an injury proceeding from the State, the office of declaring justice must, in general at least, be exercised independently, for the office of enforcing it does not exist.  This, however, furnishes no reason why justice in such cases should not be ascertained and declared; for we cannot, or should not, suppose any necessity for enforcing it.  To know what justice requires from the State to one of its citizens is all that is requisite.  That it will be done no doubt should be entertained.  The law " presumes that to know of any injury and to redress it are inseparable in the royal breast." 3 Bl. Com. 255.

The act under consideration, and indeed, all prior legislation, conferring jurisdiction and power upon the Court of Claims, are based upon a recognition of the foregoing views. Nowhere is any attempt made to render the judgments of that tribunal judicially enforceable.  An independent discharge of the function of declaring justice is alone provided for.  Performance of the decree is left to the legislative and executive departments.  To give the judiciary the power of

compelling those departments, would destroy their independence and reduce them to subjection, a result wholly at war with our constitutional system.

It is true that the seventh section of the act of March 3d, 1863, directs that judgments of the Court of Claims "shall be paid out of any general appropriation made by law, for the satisfaction of private claims;" and the obligation to make such payment is imposed upon the Secretary of the Treasury; but this obligation is imposed upon him by Congress, not by the court. The court has no authority to adjudge that it be so paid, still less, any authority to enforce such payment by compulsory process. The legislation in this respect simply consists of an appropriation by Congress to pay such claims as the Court of Claims may allow.

Nor is the decision of this court in the case of *Gordon* v. *The United States*, 2 Wall. 561, opposed in any degree to this view. The decision in that case did not proceed upon the ground that the determination by a tribunal of a controversy, when it had no power to execute its determination, was not an exercise of judicial power, but upon the ground that when it was still left to an executive department to review the determination of the Supreme Court (as the act of 1863 did leave it), such determination, although an exercise of judicial power, was not a final one, and, therefore, not of the character which marks the jurisdiction of this court. See *United States* v. *Alire*, 6 Wall. 577; *United States* v. *Klein*, 13 Wall. 128, 144; *United States* v. *O'Grady*, 22 Wall. 641, 647.

In the opinion of Mr. Justice Nelson, in the case of *United States* v. *Alire*, *supra*, an observation is found which may tend to create misapprehension. The court, in that case, held that the Court of Claims had no jurisdiction; and in assigning the reasons, the learned judge said: "We find no provision in any of the statutes requiring a judgment of this character to be obeyed or satisfied." But, certainly, this could be no just ground for the inference that no power was conferred to render such a judgment. For the reasons already indicated, no power could be conferred upon the court, to compel obedience to or satisfaction of its judgments; nor was it necessary, in

order to render such judgments as complete and effective as they can be made, nor in any statute has any attempt been made to enable the court to enforce any of its judgments, of whatever description, whether adjudging the petitioner entitled to a recovery of money or other relief.

The other reason assigned by the learned judge for the decision, was the true ground upon which the court proceeded, namely, that inasmuch as the statute had made provision, in pursuance of which payment or satisfaction of some of its judgments might be obtained (not indeed, by process of the court, but by congressional appropriation), and had made no such provision for judgments awarding equitable relief, the inference was justified, that power to render judgments of the latter description was not intended to be conferred. Nothing is said concerning the soundness of this inference.

It is unnecessary to argue that injuries proceeding from the State should be redressed as certainly and promptly as those inflicted by private persons. Justice is no respecter of persons. Its obligations are universal and absolute. The ancient maxim that "the king can do no wrong" was never really effective to defeat justice, except in the case where a wrong could not be imputed to ministers or officers, and then only for the purpose of guarding the person of the sovereign.

The government in the transaction in question was exercising no function of sovereignty, but simply engaging in the ordinary business of selling property, of which it was the owner. It simply made a contract with one of its citizens. It cannot do this without consenting to be bound by the ordinary rules which govern the conduct of individuals in such transactions. Were it necessary for the government to enforce such contract, it could enter the courts and have the agreement ascertained and declared by judicial methods. To deny the same privilege to the party with whom it deals is a plain denial of justice. How would this comport with the "*nulli negabimus justitiam*" of the Great Charter? "When a government enters into a contract with an individual, it deposes, as to the matter of the contract, its constitutional authority, and exchanges the character of legislator for that of

a moral agent, with the same rights and obligation as an individual." 3 Hamilton's Works, 518.

Nor is the practical recognition of the obligation of the State to redress the injuries it may inflict on its citizens, a recent development of civilization. Centuries ago in England the law had provided a forum and a procedure well calculated to afford redress in all cases which were likely to arise. The petition of right (*petition de droit*) and the plea of right (*monstrans de droit*) were modes of redress at common law always open to the subject, and which could be prosecuted in the court of chancery on its common law side, or in the Court of Exchequer. 3 Bl. Com. 256. The procedure in such cases has, by legislation in recent times, been assimilated to that in cases between subject and subject (23–24 Vic. c. 34); but the jurisdiction was complete before. The seventh section of the act referred to declared that it shall not be construed as giving to the subject a remedy against the Crown in cases where none before existed. *The Banker's Case*, 14 Howell's St. Tr. 1; *Thomas* v. *The Queen*, L. R. 10 Q. B. 31; *Smith* v. *Upton*, 6 M. & G. 252, note *a.*

It was, indeed, for a long time the reproach of the government of the United States, and still is, if the contention of the appellant is well founded, that it furnished its citizens with no judicial methods by which they could assert just claims against it, and left them with no other means of redress than supplication to executive or legislative power, neither of these agencies having the time, the knowledge, or the means to prosecute the inquiries necessary in order to ascertain justice, and too apt to be moved by caprice or favor.

To support the necessity or propriety of the jurisdiction for which we are contending by an appeal to prudential considerations seems almost a surrender of the high ground of positive right upon which the argument more properly rests. Such considerations, however, would of themselves suffice to sustain the views for which we are contending.

When courts in which a citizen can assert his claims against the government are denied, and Congress entertains his petition for redress, the nature of the task which has to be performed

(if Congress discharges its duty) is not thereby changed. It is still a judicial function which is to be performed. The facts must be ascertained, and the law declared. The execution of this function by Congress is a usurpation defensible only on the ground that, unless the public duty is thus performed, it will not be performed at all. It involves all the mischiefs which usually attend the exercise of usurped powers, superadded to those which always accompany private legislation — erroneous conclusions arising from haste and neglect, and the injustice of caprice, favor or corruption. A right which must be sought by petition to a legislative body, because there is no court in which it can be asserted, is but too likely to become the subject of purchase. It requires the agency, not of a bar, but of a lobby.

We must add to this catalogue of mischiefs the others not less flagrant which arise from the neglect of proper legislative duties. The true business of legislation will never be successfully performed, when the time and talents of the legislators are devoted to attention to private claims. This latter consideration was undoubtedly the most influential one which led to the original establishment of the Court of Claims.

Seeing, therefore, that the purely judicial function of ascertaining facts and pronouncing the law thereon is separable and independent from the office of enforcing justice; that whatever of theoretical or practical difficulty which would arise from allowing compulsory process is attached only to the latter function, and not to the former; seeing that the exercise of the former is the plain duty of every civilized State; that it has been clearly recognized from an early period, and provision made for it; that our own government was long under the just reproach of neglect and failure in the performance of this necessary duty; that the practical mischiefs resulting therefrom had become so flagrant as to move Congress to an endeavor to provide a remedy by establishing the Court of Claims; and that the act under consideration is an obvious effort to enlarge that remedy and make it more effective, we need no longer delay the conclusion that this act should be construed, should any occasion for construction be found, not

with rigid parsimony, but with the liberality which is usually and properly extended to remedial legislation. When Congress endeavors to perform its duty, and to supply great defects in administration, and to cure the most crying evils, it is the duty of courts to second the endeavor. When a new and beneficial jurisdiction is conferred, the maxim "*boni judicis est ampliare jurisdictionem*" is most applicable. Sedgwick on Stat. & Con. Law, 359 *et seq.*

In a celebrated case in the British courts concerning the extent of the remedial power which could be exercised under the ancient proceeding of the Petition of Right, the objection was taken that, although relief could be had in cases of dispute concerning lands or chattels, recoveries of money in cases *ex contractu* could not be adjudged. The court, by placing its decision upon another ground, avoided this objection; but it gave a worthy expression to the spirit of exposition in which such a question should be approached. "We may observe that there is nothing to secure the crown against committing the same species of wrong, unconscious and involuntary wrong, in respect of money, which founds the subject's right to sue out his petition when committed in respect to lands, or specific chattels; and there is an unconquerable repugnance to the suggestion that the door ought to be closed against all redress or remedy for such a wrong." *Baron de Bode's Case*, 8 Q. B. 208, 273. In the light of this rule of interpretation some objections which the appellants may raise are to be briefly considered.

(*a*) It will not, of course, be now insisted that jurisdiction is not conferred upon the courts named in the act over claims founded upon equitable considerations. That view was taken by this court in interpreting the original act establishing the Court of Claims. *Bonner* v. *United States*, 9 Wall. 156. In the opinion in this case the observation is made in respect to rights in equity that "Congress wisely reserved to itself the power to dispose of them." The justice of this observation is (with deference) not fully perceived. If it be proper that justice should be ascertained and declared by judicial methods in respect to legal claims against the government, why is it

not equally proper that the same course should be pursued in respect to equitable claims? Ought not justice to be done in the one case as well as in the other? Is Congress better fitted to try a suit in equity than a suit at law? Are the evils which are likely to flow from the usurpation of judicial functions by Congress of less magnitude in the case of equitable claims?

But whatever may have been the propriety of such an observation in relation to the original act creating the Court of Claims, it is certainly not applicable to the legislation under notice. After the decision above referred to had been made, Congress reforms the phraseology of the first section of its original act, and exhausts the language of extension so as to make the jurisdiction broad enough to embrace every, claim against the United States which can be made the subject of judicial cognizance, with the express and sole exception of pensions. It seems impossible to resist the conclusion that it was the intent of the later act to remove the objection which the courts had allowed in respect to the earlier one, and to make the discharge of governmental duty in this respect co-extensive with governmental obligation.

(b) It may be urged that suits in equity frequently require that several parties be made defendants, and that the act makes no provision for this. But this objection has no application to equitable claims against the government alone, and it would be difficult, if not impossible, to make provision for the joining of other defendants in the Court of Claims. It is but a limited jurisdiction which is conferred upon other tribunals. But this obstacle, in most cases at least, is not of great magnitude. The courts upon which jurisdiction is conferred may separately determine what equitable duty the government owes to the party before the court, leaving the rights of that and other parties, as between themselves, to be determined by other tribunals. The case in which some proper defendants cannot be brought into court is familiar to Courts of Equity, and it often proceeds in the absence of such defendants.

(c) In a case already referred to (*United States* v. *Alire*, 6 Wall. 573) an appeal was taken from a determination of the

Court of Claims allowing equitable relief. The court then possessed such powers only as were bestowed by the acts of 1855 and 1863, and it was held that under those acts no power was conferred to render other judgments than for money.

It may be urged that under the act of 1887 there is no express power to render other judgments than for money, and that the provisions in the act last referred to, relating to interest on judgments, apparently assume that all judgments are to be for money, and consequently that it must still be held that the power of the court is limited to the rendition of judgments of that character. Although it is not at all necessary, in answer to this argument, to draw in question the decision in that case, yet it may be suggested whether the rule of construction adopted was not somewhat too rigid. The act of 1863 confirmed and enlarged the jurisdiction created by the act of 1855; and that described a certain class of claims, and authorized the court " to hear and determine " them. If the claim was for relief equitable in its nature, the determination of it authorized by the act, authorized a judgment allowing the claim if the title to such relief was otherwise made out. How can a claim for equitable relief be heard and determined unless it be possible to declare that the claimant is entitled to it? And where general jurisdiction to hear and determine is given, it would seem that authority must necessarily be deemed to have been given, to render such judgment as the law requires, unless, by some express and unequivocal language, the court is limited in its award of relief. It would seem as if in the case referred to, the court first by implication alone reached the conclusion that relief was limited, and then employed that implication to qualify the otherwise unqualified grant of power.

(*d*) But the act we are now interpreting is of a wholly different character. The terms of the grant of jurisdiction are as broad and emphatic as they can be made. It is impossible not to believe that it proceeded upon the full recognition of the truth that the furnishing of redress by the government in cases of just claims upon it by individuals was a plain governmental obligation, which could not be discharged except by providing judicial methods by which justice should be ascer-

tained and declared; that the creation and furnishing of such methods was at the same time dictated by a prudential regard for the government's own interests in relieving Congress from burdens which it could not carry and which greatly tended to disable it from the discharge of its proper duties; and that the determination was to frame a measure of relief which should be co-extensive with the obligation.

If these were the views which induced the adoption of the measure, how is it possible by distant and doubtful implication to limit the jurisdiction by the line which separates judgments for money from those for other relief? Is the obligation to furnish other relief, when the case requires it, less strong? Is Congress better fitted to mould and shape equitable relief than it is to reckon how much money is due? Is the work of determining equitable relief a less inappropriate or burdensome office for the legislative power to perform? Is it accompanied with any greater hazards to the interests of the government? The proper answer to all these questions is wrapped up in the just proposition that when Congress has conferred authority upon the Court of Claims "to hear and determine . . . all claims founded upon the Constitution of the United States, or any law of Congress except for pensions, or upon any regulation of an executive department, or upon any contract, expressed or implied with the government of the United States, or for damages, liquidated or unliquidated, in cases not sounding in tort, in respect of which claims the party would be entitled to redress against the United States either in a court of law, equity, or admiralty, if the United States were suable;" the plain intention is to render justice in all cases, save the few excepted ones, by judicial methods and in the ordinary judicial forms, and that where the government would be bound to furnish redress to an individual, if the government were suable, it shall be at least declared that it is bound to furnish that same redress whatever the nature of it may be.

But in the resort to interpretation and construction, were this allowable, it will be found that the above conclusion will only be supported and confirmed. (a) The broad signifi-

cance of the word "*claim*" should be noted. It is the largest term known to the law in describing the redress to which a party may be entitled. Worcester's Unabridged Dic. *sub* "*verb;*" *United States* v. *Wilcox,* 4 Blatchford, 385, 388; *Prigg* v. *Pennsylvania,* 16 Pet. 539, 614, 615; 1 Burrill's Law Dic. 296. (*b*) And to broaden, rather than limit its already extensive meaning, it is made indifferent whether the claim is one for which a party is entitled to redress in a court of law, equity, or admiralty. (*c*) And to make it co-extensive with right or cause of action, it is made to embrace every form of redress which could be asserted against the United States, "if the United States were suable." (*d*) Surely in the face of this manifest effort to embrace all forms of redress, the suggestion that those only were intended which consist in demands for money, must be promptly rejected. (*e*) But, more than this, the requirement is made that the petition shall, *inter alia,* set forth "the money or other thing claimed." Will it be suggested that the law requires the petition to set forth a demand which it does not intend shall be considered? (*f*) Sec. 7 requires that a judgment shall be rendered in every case, and if the suit be "in equity or admiralty the court shall proceed with the same according to the rules of such court." (*g*) Nor should the significance of the title be lost sight of, "An act to provide for the bringing of suits against the United States."

In the face of these indications of intent, the single circumstance that money judgments only are directly mentioned is of no significance. It was necessary to mention these for the purpose of securing to claimants the right to interest. This does not follow as of course in the case of government claims. It was wholly unnecessary to mention other judgments, or to point out any way in which they should be obeyed or satisfied. In the case of a money judgment the function of the *court* was fully performed when it was rendered. It could not be paid without the action of Congress in making an appropriation. No executive officer could otherwise apply a dollar of the public money to its satisfaction. The raising and appropriation of money is the exclusive function of Congress.

In respect to other things to be done, that is, other forms of relief, Congress would have no concern. Such matters would concern the executive departments alone. It was enough that the court should declare what the government should do. The government was charged with full notice of the declaration, for it is one of the parties to the suit. The doing of the act could not, at least in most instances, be compelled, and there was no intention to furnish means of compulsion in any instance.

Thus there is ground for the particular mention of money judgments, while there is silence in respect to others. Obedience to the latter is an immediate duty of the executive departments, without any intervention of Congress; but there is no duty to obey the former until an appropriation is made by Congress. Where such an appropriation is made, money judgments stand precisely like the others. The execution of both are alike an executive duty; but the execution of neither can be enforced.

*Mr. John Paul Jones*, by permission of court, filed a brief for all the appellees.

*Mr. Solicitor General* closed for appellants.

Mr. Justice Bradley, after stating the case as above reported, delivered the opinion of the court.

The question involved is, whether the act of March 3d, 1887, which is entitled ": An act to provide for the bringing of suits against the government of the United States" (24 Stat. 505), authorizes suits of the kind like the present, which are brought not for the recovery of money, but for equitable relief by specific performance, to compel the issue and delivery of a patent. In the case of *United States* v. *Alire*, 6 Wall. 573, we distinctly held that the acts of 1855 and 1863, which established the Court of Claims and defined its jurisdiction, did not give it power to entertain any such suits as these; and that case was followed by *Bonner* v. *United States*, 9 Wall. 156, and has been approved in subsequent cases. *United*

*States* v. *Gillis*, 95 U. S. 407, 412; *United States* v. *Schurz*, 102 U. S. 378, 404. It is argued, however, that the new law has extended the jurisdiction of the Court of Claims and the concurrent jurisdiction of the Circuit and District Courts, or at least the latter, so as to embrace every kind of claim, equitable as well as legal, and specific relief, or a recovery of · property, as well as a recovery of money. If such is the legislative will, of course the courts must conform to it, although the management and disposal of the public domain, in which the newly claimed jurisdiction would probably be most frequently called into exercise, has always been regarded as more appropriately belonging to the political department of the government than to the courts, and more a matter of administration than judicature. A careful examination of the statute, and a comparison of its terms with those of the acts of 1855 and 1863, can alone settle the question.

By the-first section of the act of February 24, 1855, 10 Stat. 612, c. 122, it was enacted that a court should be established, to be called the Court of Claims, the jurisdiction of which was defined as follows: " The said court shall hear and determine all claims founded · upon any law of Congress, or upon any regulation of an executive department, or upon any contract, express or implied, with the government of the United States, which may be suggested to it by a petition filed therein; and also all claims which may be referred to it by either house of Congress." The act of March 3d, 1863, passed to amend the act of 1855, 12 Stat. 765, c. 92, added: " That the said court . . . shall also have jurisdiction of all set-offs , counterclaims, claims for damages, whether liquidated or unliquidated, or other demands whatsoever, on the part of the government against any person making claim against the government in said court." Jurisdiction was subsequently given of claims for the proceeds of property captured or abandoned during the rebellion, and of claims of paymasters and other disbursing officers for relief from responsibility on account of capture of government funds or property in their hands. These latter branches of jurisdiction need not be considered here.

Turning now to the act of March 3d, 1887, which reënacted

or revised the previous laws as to the jurisdiction of the Court
of Claims, and conferred concurrent jurisdiction for limited
amounts on the ordinary courts, we find the following lan-
guage used:·

"The Court of Claims shall have jurisdiction to hear and
determine the following matters :

"First.   All claims founded upon the Constitution of the
United States or any law of Congress, except for pensions,
or upon any regulation of an executive department, or upon
any contract, expressed or implied, with the government of
the United States, or for damages, liquidated or unliquidated,
in cases not sounding in tort, in respect of which claims the
party would be entitled to redress against the United States
either in a court of law, equity, or admiralty, if the United
States were suable."   .  .  .

"Second. All set-offs, counter-claims, claims for damages,
whether liquidated or unliquidated, or other demands what-
soever on the part of the government of the United States
against any claimant against the government in said court."

"Sec. 2.  That the district courts of the United States shall
have concurrent jurisdiction with the court of claims as to all
matters named in the preceding section where the amount of
the claim does not exceed one thousand dollars, and the cir-
cuit courts of the United States.shall have such concurrent
jurisdiction in all cases where the amount of such claim exceeds
one thousand dollars and does not exceed ten thousand dollars."

The jurisdiction here given to the Court of Claims is pre-
cisely the same as.that given in the acts of 1855 and 1863,
with the addition that it is extended to "damages  .  .  .
in cases not sounding in tort" and to claims for which redress
may be had "either in a court of law, equity, or admiralty."

"Damages in cases not sounding in tort" — that is to say,
damages for breach of contract — had already been held to
be recoverable against the government under the former acts.
*United States* v. *Behan*, 110 U. S. 338; *United States* v. *Great
Falls Manufacturing Co.;* 112 U. S. 645; *Hollister* v. *Benedict
& Burnham Manfg. Co.*, 113 U. S. 59, 67.

"Claims" redressible "in a court of law, equity, or admi-

ralty," may be claims for money only, or they may be claims for property or specific relief, according as the context of the statute may require or allow. The claims referred to in the original statute of 1855, as described in the first section thereof, above quoted, might have included claims for other things besides money; but various provisions of that act and of the act of March 3, 1863, were inconsistent with the enforcement of any claims under the law except claims for money. Thus, in the 5th section of the act of 1863, the right of appeal was limited to cases in which the amount in controversy exceeded $3000, and in the 7th section it was provided that if judgment should be given in favor of the claimant, the *sum* due thereby should be paid out of any general appropriation made by law for the payment of private claims; and if a judgment was affirmed on appeal, interest was to be allowed thereon, etc. In the case of *United States* v. *Alire*, 6 Wall. 573, Mr. Justice Nelson speaking for the court, said: "It will be seen by reference to the two acts of Congress on this subject that the only judgments which the Court of Claims is authorized to render against the government, or over which the Supreme Court has any jurisdiction on appeal, or for the payment of which by the Secretary of the Treasury any provision is made, are judgments for money found due from the government to the petitioner. And although it is true that the subject matter over which jurisdiction is conferred, both in the act of 1855 and of 1863, would admit of a much more extended cognizance of cases, yet it is quite clear that the limited power given to render a judgment necessarily restrains the general terms and confines the subject matter to cases in which the petitioner sets up a moneyed demand as due from the government." The decree of the Court of Claims in that case was that the claimant recover of the government a military land warrant for 160 acres of land, and that it be made out and delivered to him by the proper officer. This court said: "We find no provision in any of the statutes requiring a judgment of this character, whether in this court or in the Court of Claims, to be obeyed or satisfied."

The sections of the act of 1863 referred to in this opinion are

still in force, not being repealed by the act of 1887, which only repeals "all laws and parts of laws inconsistent" therewith. Section five, relating to appeals, is transferred to § 707 of the Revised Statutes, giving an appeal to this court "where the amount in controversy exceeds $3000;" and section seven, relating to the mode of paying judgments out of a general appropriation, and allowing interest where a judgment is affirmed, is contained in §§ 1089, 1090 of the Revised Statutes. These sections are still the law on the subjects to which they relate, being necessary to the completion of the system, and not being supplied by any other enactments. Indeed, they are expressly retained. The fourth section of the act of 1887 declares that "the jurisdiction of the respective courts of the United States proceeding under this act, including the right of exception and appeal, shall be governed by the law now in force, in so far as the same is applicable and not inconsistent with the provisions of this act," and the ninth section declares, "that the plaintiff or the United States, in any suit brought under the provisions of this act, shall have the same rights of appeal or writ of error as are now reserved in the statutes of the United States in that behalf made, and upon the conditions and limitations therein contained." These provisions undoubtedly include the Court of Claims as well as the District and Circuit Courts. So, in relation to interest, section ten declares that "from the date of such final judgment or decree interest shall be computed thereon, at the rate of four per cent per annum, until the time when an appropriation is made for the payment of the judgment or decree." It seems, therefore, that in the point of providing only for money decrees and money judgments, the law is unchanged, merely being so extended as to include claims for money arising out of equitable and maritime as well as legal demands. We do not think that it was the intention of Congress to go farther than this. Had it been, some provision would have been made for carrying into execution decrees for specific performance, or for delivering the possession of property recovered in kind. The general scope and purport of the act is against any farther extension than that here indicated. The expression in the fifth section, refer-

ring to "money or any other thing claimed, or the damages sought to be recovered," on which so much reliance is placed by the appellees, cannot outweigh the considerations referred to, and operate to introduce entirely new fields of jurisdiction. It is one of those general expressions which must be restrained by the more special and definite indications of intention furnished by the context.

We cannot yield to the suggestion that any broader jurisdiction as to subject matter is given to the Circuit and District Courts than that which is given to the Court of Claims. It is clearly the same jurisdiction — "concurrent jurisdiction" only — within certain limits as to amount; and the language in which those limits are expressed furnishes an additional argument in favor of the conclusion which we have reached. It is declared "that the District Courts of the United States shall have concurrent jurisdiction with the Court of Claims . . . where the amount of the claim does not exceed $1000," etc. This language is properly applicable only to a money claim. Had anything but money been in the legislative mind the language would have been, "where the amount or value of the thing claimed does not exceed $1000," etc.

Of course, our province is construction only; the policy of the law is the prerogative of the legislative department. But notwithstanding the glowing terms in which able jurists have spoken of the progress of civilization and enlightened government as exhibited in subjecting government itself, equally with individuals, to the jurisdiction of its own courts, we should have been somewhat surprised to find that the administration of vast public interests, like that of the public lands, which belongs so appropriately to the political department, had been cast upon the courts — which it surely would have been, if such a wide door had been opened for suing the government to obtain patents and establish land claims, as the counsel for the appellees in these cases seems to imagine. We are satisfied that the door has not yet been thrown open thus wide.

*The decrees of the court are reversed in all the cases, and the causes are respectively remanded with instructions to dismiss the original petitions or bills.*

Mr. Justice Miller (with whom concurred Mr. Justice Field) dissenting.

I find myself unable to concur with the majority of the court in the construction given by it, in the opinion just read, to the provisions of the act of March 3, 1887. This act was evidently intended to confer a new and important jurisdiction upon the Court of Claims, and a concurrent jurisdiction to a limited extent, in the same class of cases, upon the Circuit and District Courts of the United States. I can see no other possible object in that part of the statute which confers this new jurisdiction by the use of language which for the first time in the history of that court authorizes it to take cognizance of claims where the party would be entitled to redress, against the United States either in a court of law, equity or admiralty, if the United States were suable, than to make them suable in such cases. To hold that the distinct grant of power here provided for is controlled by the fact that this court has under former statutes decided that it did not then exist, is simply to nullify this new grant of power.

The manifest purpose of this new act was to confer power which the Court of Claims did not previously have, and to authorize it to take jurisdiction of a class of cases of which it had not cognizance before. To say that under such circumstances the new statute is to be crippled and rendered ineffectual in the only new feature which it has, in regard to the jurisdiction of that court, is in my mind a refusal to obey the law as made by Congress in the matter in which its power is undisputed.

It is clear to me that Congress intended by this act to enlarge very materially the right of suit against the United States, to facilitate this right by allowing suits to be brought in the Circuit and District Courts where the parties resided, and that it also designed to enlarge the remedy in the Court of Claims to meet all such cases in law, equity, and admiralty, against the United States, as would be cognizable in such courts against individuals.

I am authorized to say that Mr. Justice Field agrees with me in this dissent.