## Loeb et al. v. Edward G. Budd Manufacturing Company

*William A. Gray*, *Russell Miller* and *Edwin P. Rome*, for plaintiffs.

*Richard E. McDevitt* and *James P. McCormick*, for defendant.

MILNER, J., May 14, 1948.— . . .

Defendant, Edward G. Budd Manufacturing Company (hereinafter referred to as "Budd"), on August 13, 1942, entered into a prime contract with the United States of America to build cargo airplanes for the United States Navy. The contract was on a cost-plus-a-fixed-fee basis under which the Government agreed to furnish Budd the funds necessary from time to time to carry out the contract and that title to all materials,

parts, assemblies, subassemblies, supplies, equipment and other property for the cost of which the contractor was entitled to be reimbursed and which was used or involved in and about the performance of the contract, shall automatically pass to and vest in the Government. The estimated cost under the contract was $107,932,982.20 and the fixed fee $5,396,649.11. The specifications in regard to the airplanes provided that they should be equipped with specially designed lightweight hoists. Budd entered into a subcontract with Chisholm-Moore Hoist Company of Tonawanda, N. Y., whereby that company undertook to prepare the drawings, patterns, jigs, tools, dies, etc. (hereinafter referred to as "tools, etc.") for the making of these hoists, and to manufacture the hoists. Under Budd's contract with the Government, tools, etc., became the property of the Government. Budd was entitled to be reimbursed for the cost of these tools, etc., and was so reimbursed. The cost of these tools, etc., which are the subject of this suit, was paid for by the United States in its advances or payments and credits to Budd. In 1943 the Government gave notice of termination of its contract with Budd and production of the cargo airplanes was halted, a termination inventory was taken and the Government began the disposition of the surplus materials. Supervision of the disposal of the surplus materials was under the direction and supervision of a "contracting officer" designated by the Navy Department, who, inter alia, was charged with determining which materials should be directed or transferred to a Governmental department, which should be sold to other war contractors and which should be sold to dealers.

On October 16, 1944, plaintiffs, H. Loeb & Son (hereinafter referred to as "Loeb"), submitted to Budd an offer of $250 for the aforesaid tools, patterns, dies, jigs and drawings (which we have previously desig-

nated as "tools, etc.") prepared by the Chisholm-Moore Hoist Company for the manufacture of the aforesaid hoists. Budd accepted this offer on or about October 28, 1944. A memorandum dated October 31, 1944, setting forth Loeb's bid, was approved in writing by Lieutenant Murray G. Lee, who was the material inspector for the Navy stationed at Budd's plant. Loeb's check for $250 in payment for the tools was accepted by Budd. On January 4, 1945, Budd informed Loeb that the bureau of aeronautics of the Navy Department had advised it that the sale had not been approved in accordance with the regulations of the United States Navy Department. On April 20, 1945, Budd wrote a letter to Loeb notifying them that it had cancelled its shipping order in regard to the tools because the transaction had been entered into without proper Navy approval and sent a check in the sum of $250 to Loeb as a refund of their payment. Loeb refused to accept the check and returned it. Budd's letter was written after it received a letter dated April 18, 1945, from Commander John J. McKay, contracting officer of the Bureau of Aeronautics of the Navy Department for the eastern district, in which district Budd's plant was located. This letter informed Budd that the said tools, etc., under its contract with the Government were the property of the United States; that their sale was subject to his approval as contracting officer; that he had not approved the sale and that the preliminary approval of such a sale by Navy personnel other than the contracting officer had no binding force whatever. Loeb thereupon brought this suit in equity against Budd for specific performance of the contract of sale. It alleges, inter alia, that the tools, etc., which are the subject of the suit, are unique as its main reason for bringing this suit in equity. The evidence establishes that the said tools, etc., are unique. They were not prepared for a standard type of hoist, but for a special

hoist with substantial lifting power in comparison with its lightness of construction, and these tools, etc., are not obtainable in the usual channels of trade or on the open market.

Unfortunately for plaintiffs, however, this court does not have in this case the jurisdictional power to enter the decree for specific performance prayed for by plaintiffs. Title to and ownership of the said tools, etc., are in the United States of America and said title and ownership were in the United States of America at the time the sale was made. Defendant, Budd, does not now and never owned the said tools, etc. By the terms of the contract between Budd and the Government, schedule A, sec. 6(a), it is agreed and provided that:

"(a) Title. The title to all materials, parts, assemblies, sub-assemblies, supplies, equipment and other property for the cost of which the contractor is entitled to be reimbursed hereunder shall automatically pass to and vest in the Government upon delivery to the contractor, at the contractor's plant or at such other time and place as the Inspector of Naval Aircraft may designate in writing, in the case of any such property which is purchased for the performance of this contract, or, in the case of property not so purchased upon the allocation thereof to the contract by the commencement of processing or use thereof or otherwise. Such passage and vesting of title shall not impair any right which the Government might otherwise have under this contract, including but not limited to the right to reject any supplies hereunder, and shall not relieve the contractor of any of the obligations under this contract."

Payment for the tools was made by the Government in the adjustment of its account with Budd in the matter of the said contract. Furthermore, the evidence shows conclusively that the tools, etc., are not in the actual possession of Budd and never have been. They

are located in the Chisholm-Moore plant at Tonawanda, N. Y., where they are stored under the control of the United States Government.

Obviously, before a court is competent to render a decree making a person individually liable or ordering a person to perform a contract, jurisdiction of such person must be acquired; he must be summoned before the court by process known to the law and served therewith in the manner prescribed by law, otherwise the court is powerless effectively to act, unless jurisdiction is acquired by waiver, acceptance, agreement or appearance. In order to grant plaintiffs the relief prayed for it would be necessary for this court to have jurisdiction of the United States of America as a party hereto. That it does not have. The United States is not a party to this suit and the jurisdiction of this court of the United States in this matter has not and cannot be acquired. This court has no power to order the United States brought upon the record as a party and plaintiffs have no right to do so. By article III, sec. 2, of the Federal Constitution, the judicial power of the Federal courts is extended to "controversies to which the United States shall be a party". Unless it consents to be sued, the sovereign government cannot be sued even in its own courts without its consent: U. S. v. Clarke, 8 Pet. 436 (1834); Williams v. U. S., 289 U. S. 553 (1933). By the creation of the Court of Claims the United States has consented to be sued in that court and by statute has granted the Federal district courts concurrent jurisdiction with the Court of Claims of certain claims not exceeding $10,000 (28 U. S. C. §41 (20), Judicial Code §24 (20) amended), but neither the Federal district courts nor the circuit courts nor the Court of Claims has jurisdiction in equity to compel specific performance against the United States: U. S. v. Jones et al., 131 U. S. 1; 9 S. Ct. 669; 3 Hughes, Federal Practice Jurisdiction and

Procedure, sec. 1873, vol. 5, secs. 2730, 2741. In the instances where the United States has consented to be sued they are with respect to claims for money.

A decree of specific performance against defendant would be a futile gesture and incapable of enforcement, because defendant has neither title to the tools, etc., nor control or possession of them. Furthermore, the said tools, etc., are not within jurisdiction of the court and no personal jurisdiction of the owner of the tools, etc., has been acquired in this case. Where a defendant is unable to perform because he has no title the remedy of specific performance cannot be granted: 4 Pomeroy Equity Jurisprudence 1046.

Whether plaintiffs have a claim at law against defendant in this court for damages for breach of contract, or a claim at law in a Federal tribunal against the United States for damages for breach of contract, are matters which we are not called upon to decide.

It was not shown by the evidence or legal authority, and could not be shown, that Budd had authority to bind the Government to the contract with plaintiffs. Plaintiffs' testimony was largely devoted to an attempt to show that under the directives and regulations of the Navy Department, Lieutenant Lee had authority to bind the United States in the matter of the sale of the tools, etc. "Persons dealing with agents of the Government are chargeable with the knowledge of the extent of their authority, and any act not within the scope of their authority does not necessarily bind their principal. It is fundamental that, in order to impose contractual duty or obligation upon the United States, there must be specific statutory authority for the contract or an appropriation adequate and available for its fulfillment . . .": 9 Williston on Contracts, 292 sec. 200. In the view we have taken of this case the question as to the scope of Lieutenant Lee's authority to bind the United States is an academic one and has

no bearing upon the ultimate decision. The fact is that the Government has title to and control of the subjects of the alleged sale and they are not within the State of Pennsylvania. The Government has refused to recognize the purported contract of sale. Inasmuch as this court lacks jurisdiction over the Government of the United States, the questions as to whether its refusal to recognize or approve the action of the Navy Department's material inspector, Lieutenant Lee, was justified, or in proper compliance with departmental directives or regulations, or within its prerogative as a sovereign, are not for this court to decide and are immaterial to the issue before us. We are therefore of the opinion that plaintiffs are not entitled to a decree for specific performance against defendant. . . .

And now, May 14, 1948, upon consideration of the foregoing case, it is ordered, adjudged and decreed that the bill in equity filed herein by Armand G. Loeb and Leonard Loeb, trading as H. Loeb and Son, against Edward G. Budd Manufacturing Company, be and it hereby is dismissed. Plaintiffs to pay the costs.