**P. COBB and Osro Cobb, Plaintiffs,**

**v.**

**UNITED STATES, Defendant.**

**Civ. A. No. 967.**

United States District Court
W. D. Arkansas,
Hot Springs Division.
April 22, 1965.

Osro Cobb, Little Rock, Ark., for plaintiffs.

Charles M. Conway, U. S. Atty., Robert E. Johnson, Asst. U. S. Atty., Fort Smith, Ark., for defendant.

JOHN E. MILLER, Chief Judge.

There is before the court a motion filed by defendant March 31, 1965, to dismiss for lack of jurisdiction to adjudicate the instant controversy.

In passing on the motion the court has considered the allegations of the complaint, brief submitted by defendant in support of the motion to dismiss and the brief submitted by plaintiffs in opposition to the motion, together with the Mineral Lease that was executed March 1, 1953, by the plaintiff P. Cobb and the Director, Bureau of Land Management, Assistant Chief, Division of Minerals, on behalf of and for the United States of America.

In paragraph 1 of the plaintiffs' complaint they predicated jurisdiction upon "a dispute existing between the parties as to the amount of rentals (or royalties) accrued and owing to the United States under a certain mineral lease contract executed" [1] between the plaintiffs and the

1. The material substantive provisions of the lease between the Department of Interior, Bureau of Land Management, and the plaintiffs, executed March 1, 1953, are as follows: Section 1 grants lessees (plaintiffs) the exclusive right to mine, remove and dispose of barite upon 300 acres in Montgomery County, Arkansas, for a period of 20 years for an annual royalty to be fixed by the lessor. Section 2, lessee agrees to begin production within 24 months and to continue thereafter unless interrupted by strikes, the elements, or casualties not attributable to the lessee; the lessor agreeing to grant reasonable extension of time for the commencement of production and the suspension of production in the interest of conservation, or when the lease cannot be successfully operated at a profit, or for any other reason when such action does not adversely affect the interest of the United States. The annual rental to be paid in advance of 25¢ for each acre or fraction thereof until production commences, and the rental payment prior to production to be a credit to that year in which production commences. A minimum royalty provision of $300 to be paid by the lessor beginning with the third year of the lease or after commencement of production. The lessor in its discretion may suspend the royalty requirement when production is interrupted or suspended. A bond in the sum of $1000 to be furnished, and also to furnish the District Mining Supervisor with certain information compiled monthly on agency forms. Thereafter Section 2 contains certain provisions with respect to inspection, maps, day-to-day operations, and taxes, which are not pertinent. Section 2 concludes with a provision as to nondiscrimination in employee hiring and a provision that all payments of the lessor be made payable to the order of the Treasurer of the United States. In Subsection (1) of Section 2 the following provision is contained which relates to assignment of the lease:

> "(1) *Assignment.* Not to assign this lease, or any interest therein, whether by direct assignment, operating agreement, working or royalty interest, or otherwise, nor sublet any portion of the leased premises, except with the approval in writing of the lessor. All such assignments or subleases must be submitted in triplicate within 90 days from the date of execution and must contain all of the terms and conditions agreed upon by the parties thereto. No overriding royalties or payments out of production shall be created which would exceed ½ the royalties payable under this lease to the lessor. An assignment of all or part of the record title to a portion of the acreage in the

United States on March 1, 1953, covering 300 acres of land in Montgomery County, Arkansas. It is further alleged that the suit is "authorized against the United States under the provisions of Subsection (a)2 of Section 1346, U.S.C.A." Following the jurisdictional allegations, it is stated in the complaint that the plaintiffs made a "contract" with the National Lead Company assigning their interest

lease shall separate the lease into separate leaseholds and the terms hereof shall apply separately to the segregated portions. Advance annual rental payments if previously terminated shall be resumed as to an undeveloped segregated portion on the next anniversary date of the lease, the minimum royalty payment herein specified shall apply separately to the segregated portions and the time allowed within which to commence operations on an undeveloped segregated portion shall be such reasonable period as shall be prescribed by the lessor at the time the assignment is approved."

Section 3 of the lease contains provisions with respect to protection of the property from destruction, waste, fire prevention, restoration of the surface from any damage by virtue of mining or exploring, and concludes with a designation of the authorized official to whom all matters relating to the lease should be directed. There is an attachment to Subsection (f) of Section 3 which relates to restoration of the surface and a bond to guarantee performance, which are not material herein.

Section 4 provides for the maintenance of a designated agent by the lessee to whom matters shall be directed concerning the lease.

Section 5 provides for the renewal of the lease at the expiration of its primary term upon the same general conditions as provided for in the original term.

Section 6 provides for the protection of certain easements and a right of way, a restriction against monopoly and a right of the lessor to remove all fissionable material, and the right of the lessor to waive any covenants and conditions contained therein with respect to breaches of the lease. Section 7 contains a restriction upon the use and disposition of the surface with reservation to the United States to sell, lease, or otherwise exercise its rights which do not unduly interfere with the lease and a reservation in the lessor of the right to grant other minerals and mineral leases in the surface.

Section 8 provides:

"*Relinquishment of Lease.* Upon payment of all rentals, royalties and other debts due and payable to the lessor and upon payment of all wages or moneys due and payable to the workmen employed by the lessee, the lessee may, upon a satisfactory showing that the public interest will not be impaired, surrender all or any subdivision or subdivisions of the area included in the lease. In no case will the lease be terminated in whole or in part until and unless the lessee shall have made provision for the preservation of any mines and mineral deposits—productive works or permanent improvements on the lands covered thereby and complied with Section 3(d) hereof. A surrender must be by a relinquishment filed, in triplicate, with the Director, Bureau of Land Management. A relinquishment upon its approval shall take effect as of the date it is filed."

Section 9 provides for the removal of equipment at the termination of the lease.

Section 10 provides:

"*Proceedings in case of default.* If the lessee does not comply with the applicable regulations made a part hereof or the terms of this lease and such default continues for a period of 30 days after service of written notice thereof by the lessor, the lease may be canceled by the Director, Bureau of Land Management. However, if production has commenced on the lease, it may be canceled only by appropriate proceedings in a court of competent jurisdiction; this provision does not apply to leases issued for a period of five years or less which may be canceled in the manner stated above. Furthermore, if the lessee fails to take prompt and necessary steps to prevent loss or damage to the mine, property, or premises, or danger to the employees, the lessor may enter on the premises and take such measures as may be deemed necessary to prevent such loss or damage or to correct the dangerous or unsafe condition of the mine or works thereof, which shall be at the expense of the lessee, but the lessee shall not be held responsible for delays or casualties occasioned by causes beyond the lessee's control."

Section 11 provides that the agreement is binding upon the heirs, executors, administrators, successors, and assigns of the parties. The concluding Section 12 contains a prohibition against certain named members of the executive and legislative branches of the Government from participating in the benefits of the lease, such as members of Congress, etc.

to that company, and that the plaintiffs executed and delivered the assignment to the Bureau of Land Management, Department of Interior, together with an application for transfer. The Bureau of Land Management refused to approve the assignment because of the failure of National Lead to qualify to complete the transfer by declining to pay the minimum royalties to the United States.

On December 30, 1964, in the U. S. District Court, Eastern District of Arkansas, plaintiffs obtained a judgment for specific enforcement of their contract with National Lead. Prior to January 1962 plaintiffs had advised the Bureau of Land Management of their difficulties with National Lead and the impending court action for specific performance and asked that agency for suspension of the minimum royalties pending disposition of the litigation. There has been no production of the ore from the property subject to the lease, and the plaintiffs alleged that the failure to produce during the interval involved in their litigation with National Lead in no way adversely affected the interest of the United States. Prior to the execution of their lease with the United States, plaintiffs placed upon deposit a U. S. Government bond in the face amount of $1,000 to guarantee their obligations under the lease. Defendant United States, through the Bureau of Land Management, Department of Interior, declined to suspend the rentals, and the plaintiffs have been billed for rentals, as follows: $300.00 per year from March 1, 1961, to February 28, 1965, or a total of $1,200.00. Plaintiffs, however, admit rental of $300 due the United States for that period from March 1, 1961, to February 28, 1962.

It is further alleged as an additional ground of jurisdiction that the action of the governmental agency in denying plaintiffs' application for suspension of rentals was "arbitrary in character and offensive to the provisions of the lease agreement when construed as a whole." The complaint concludes with a prayer asking that the government bond be impounded and sold, and an order fixing the rentals due in the sum of $300, same to be paid out of the proceeds of the sale of said bond, with remainder to the plaintiffs.

The plaintiffs contend that jurisdiction is granted by the Tucker Act, 28 U.S.C. § 1346(a)(2), which provides that the District Court shall have original jurisdiction, concurrent with the Court of Claims, of "any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."

The defendant contends that the consent of the Government to be sued under the Tucker Act is limited to suits for recovery of a money judgment and any incidental relief in equity in aid of such judgment, citing Blanc v. United States, (2 Cir. 1957) 244 F.2d 708. The defendant also contends that the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, does not give jurisdictional support to the plaintiffs' claim as the Declaratory Judgment Act does not enlarge the jurisdiction of the District Court, citing Skelly Oil Co. v. Phillips, 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194, and Wells v. United States, (9 Cir. 1960) 280 F.2d 275.

As the court views the instant record the issues presented are thus: (a) whether the United States, by virtue of the Constitution or statute, has consented to such suit; (b) whether the instant controversy seeks the recovery of a money judgment; or (c) whether the action by the Governmental agency involved is subject to judicial review.

In Blanc v. United States, supra, the plaintiff brought an action to review a decision denying death benefits under the Federal Employees' Compensation Act. The District Court dismissed the suit after the appropriate administrative board denied the widow's claim. The Court of Appeals affirmed on the ground that no cause of action was stated under

the Tucker Act, 28 U.S.C. § 1346(a)(2), and further that the court could not judicially review the administrative decision under Section 10 of the Administrative Procedure Act, 5 U.S.C. § 1009, because judicial review of that type of claim was expressly prohibited by the statute under which the benefits were claimed.

The defendant relies heavily upon Wells v. United States, (9 Cir. 1960) 280 F.2d 275, which states that the Declaratory Judgment Act does not in itself create jurisdiction but merely adds an additional remedy where the District Court already has jurisdiction to entertain the suit. In its brief the defendant quotes from page 277 as follows:

> "The Declaratory Judgment Act, 28 U.S.C.A. § 2201, upon which appellant relies as the basis for the relief sought herein, provides as follows:
>
> > " 'In a case of actual controversy within its jurisdiction, except with respect to Federal taxes, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.'
>
> "It is well settled, however, that said Act does not of itself create jurisdiction; it merely adds an additional remedy where the district court already has jurisdiction to entertain the suit. See Brownell v. Ketcham Wire & Manufacturing Co., 9 Cir., 1954, 211 F.2d 121. It is appellant's theory that the Tucker Act, 28 U.S.C.A. § 1346(a)(2), authorizes the present suit against the United States. That Act in relevant part reads:
>
> > " '(a) The district courts shall have original jurisdiction, concurrent with the Court of Claims, of:
> >
> > * * * * * *
> >
> > " '(2) Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.'
>
> "This Act does not give consent to suits where only declaratory or other equitable relief is sought. It applies only to suits for recovery of money damages."

In Skelly Oil Co. v. Phillips Petroleum Co. (1950) 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194, the court held that the Congress by the enactment of the Declaratory Judgment Act did not enlarge the range of remedies available in federal courts and did not extend their jurisdiction. It said at page 671 of 339 U.S., 70 S.Ct. at page 879:

> "When concerned as we are with the power of the inferior federal courts to entertain litigation within the restricted area to which the Constitution and Acts of Congress confine them, 'jurisdiction' means the kinds of issues which give right of entrance to federal courts. Jurisdiction in this sense was not altered by the Declaratory Judgment Act. Prior to that Act, a federal court would entertain a suit on a contract only if the plaintiff asked for an immediately enforceable remedy like money damages or an injunction, but such relief could only be given if the requisites of jurisdiction, in the sense of a federal right or diversity, provided foundation for resort to the federal courts. The Declaratory Judgment Act allowed relief to be given by way of recognizing the plaintiff's right even though no immediate enforcement of it was asked. But the requirements of jurisdiction—the limited subject matters which alone Congress had

authorized the District Courts to adjudicate—were not impliedly repealed or modified."

It is established that the Declaratory Judgment Act does not enlarge the substantive jurisdiction of the District Court, Skelly Oil Co. v. Phillips Co., supra; Wells v. United States, supra; and United States v. Jones, 131 U.S. 1, 9 S.Ct. 669, 33 L.Ed. 90.[2] The defendant's arguments are predicated upon the premise that the only relief sought is a construction of the parties' obligation under the lease executed between them. Should the relief sought be limited only to an interpretation of the substantive rights and duties of the parties as contained in this agreement, it would not, of course, be a suit for "the recovery of a money judgment." However, the interpretation and construction of the written instrument is but an integrated step in the determination of whether or not the plaintiffs are entitled to the recovery of a money judgment. In the prayer of the complaint, as heretofore quoted, plaintiffs seek the impounding of the government bond and an order fixing the rental, and the recovery of the difference between what they contend the rentals due should be and the value of the bond. In that sense it certainly includes relief in the nature of a money judgment. The complaint shows that without regard to the form in which the relief asked is cast, a controversy is stated with respect to an amount claimed to be due the plaintiffs and owing by the United States.

In Broderick Wood Products Co. v. United States, (10 Cir. 1952) 195 F.2d 433, the plaintiff contractor sought recovery of an amount withheld by the United States as liquidated damages for delays in a construction contract. The trial court gave judgment to the United States on its merits on a motion for summary judgment upon examining the provisions of the contract. The Court of Appeals, in affirming the trial court's granting the motion for summary judgment and considering the merits of the controversy by examining the provisions of the contract, made the following statement with regard to the defendant United States' attack on the trial court's jurisdiction at page 435:

> "It is appropriate at the outset to consider the contention of the Government that the court was without jurisdiction of the cause. The argument is that no breach of contract was alleged or claimed; * *. But the contention is not well founded. Title 28, section 1346(a) (2), United States Code, expressly vests in the district courts jurisdiction to hear and determine any civil action or claim against the Government, not exceeding $10,000 in amount, founded upon the Constitution, upon an Act of Congress, upon a regulation of an executive department, or upon an express or implied contract with the Government, or for liquidated or unliquidated damages in cases not sounding in tort. The essence of the action as pleaded in the complaint was that by the contract the Government agreed and obligated itself to pay the company a fixed amount for the material; that the material was furnished and accepted; that the Government wrongfully withheld part of the amount it was obligated to pay; and that the withholding of such amount constituted a breach of the contract. The complaint undertook to state a cause of action for breach of contract on the part of the Government to pay the company a certain amount. And under the statute, the court had jurisdiction of an action of that kind."

In United States v. Ohio Oil Co., (10 Cir. 1957) 163 F.2d 633, the plaintiff oil company sought a judicial construction and determination of the provisions of a mineral lease executed by it and

2. The defendant also cites: Birge v. United States, (W.D.Okla.1953) 111 F.Supp. 685; Powers v. United States, (7 Cir. 1954) 218 F.2d 828; Anderson v. United States, (5 Cir. 1956) 229 F.2d 675.

the United States through the Secretary of the Interior. The defendant United States attacked the trial court's jurisdiction on the grounds that the claim was not for a money judgment under the Tucker Act. The Court of Appeals proceeded to determine the controversy upon its merits and held that the action of the Secretary of the Interior in fixing the minimum royalty under the provisions of the lease was not unlawful, arbitrary or unreasonable. The court made the following statement with respect to jurisdiction to judicially review the Secretary's action in regard to the mineral lease at page 637:

> "* * * It arises under a lease contract as the embodiment of a law of Congress and the regulation of an executive department, and the result depends upon the judicial construction of that contract. If it be judicially determined that the Secretary had no legal authority under the law and regulation to require the Secretary[2] to pay the funds, he is under a legally binding obligation to repay it. It follows that the claim in suit is founded upon a law, an executive regulation, and an express contract, jurisdiction over which is conferred by the Tucker Act."

See, Patton v. United States, (W.D.Pa. 1955) 139 F.Supp. 279, in which an action for damages arising out of a lease executed between the plaintiff and the United States was sustained under the Tucker Act, 28 U.S.C. § 1346(a) (2).

The plaintiffs in their complaint also alleged that they applied to the "governmental agency in January, 1962, for suspension of rentals under the provisions of said lease agreement, notified the governmental agency that if said suspension of rentals be not allowed, plaintiffs, through economic necessity, requested outright surrender of said lease." The complaint also shows that the plaintiffs prosecuted their administrative request for relief through the various bureaus of the Department of Interior for three years, and finally received an adverse decision from the Secretary of the Interior in December 1964, and thereby exhausted their administrative remedies.

The Administrative Procedure Act, 5 U.S.C. § 1009, provides for judicial review of any Act or order of an administrative agency or subdivision of the executive branch, which aggrieves or injures any party, and which action is not specifically excluded by Congress from judicial review, Blanc v. United States, supra. Inherent in the scheme of the Administrative Procedure Act is the exhaustion of any administrative remedies before relief is sought of a judicial nature in the District Court. There seems to be no controversy as to the exhaustion of any administrative remedies by the plaintiffs in the instant controversy. Assuming, but not deciding, that the administrative action by the Bureau of Land Management, in declining to suspend the rentals for the period complained of by the plaintiffs, is subject to judicial review, the court must test such action in a very limited sense. Such review is limited to an examination of whether or not the particular decision made, of which the party is aggrieved, either exceeded the agency's statutory authority or was capricious and arbitrary. The broad authority of the Department of Interior through the Bureau of Land Management to enter into such agreements is not contested. The actual inquiry is whether or not the defendant, through its agency, has breached its contract or exceeded that authority. An examination of the provisions of the lease, heretofore set out, which establishes the parties' rights and duties with respect to the royalties demonstrates that the Bureau of Land Management through its respective agents had complete discretion in suspending the minimum royalties provided for in Section 2, subsec-

2. Although the printed opinion refers to "Secretary," the court must have meant the plaintiff oil company.

tion (d). The defendant lessor by the terms of the lease is not restricted in its discretion to suspend the minimum royalties to any particular standard, nor is there any provision requiring that the lessor suspend the minimum royalties upon the showing of any particular facts or hardship or otherwise. The particular provisions with respect to royalties vested in the lessor complete discretion in the suspension of the minimum royalties. The court cannot question the agency decision in the instant controversy with respect to its reasonableness or unreasonableness when no such standard or limitation is imposed upon the lessor. The rental periods for which the plaintiffs sought to have the royalties suspended are unquestionably within the provisions of Section 2, subsection (d). As the lessor had in its discretion the right to decline to suspend the royalties in this period, the court cannot substitute its judgment for that of the administrative agency when the agreement specifically granted the lessor that right.

If the action of the governmental agency, although informal, was a genuine and fair consideration of the claim for benefits, such action would satisfy the constitutional requirements and would preclude further court review. However, if the action of the governmental agency was arbitrary or capricious, then an action may be asserted under Section 10 of the Administrative Procedure Act, 5 U.S.C. § 1009, for the purpose of reviewing the procedures followed in making the decision not to permit a relinquishment of the lease agreement and to demand and require payment from the plaintiffs as alleged in the complaint.

Therefore, the court is of the opinion that it has jurisdiction of the instant action on the ground that it is in fact a suit to recover money. Additionally, the court has jurisdiction under the Administrative Procedure Act to test the agency's authority in the instant action and review its decision within those limits. By virtue of the provisions of the particular agreement between the parties involved herein, there has not been a sufficient allegation of any abuse of discretion on the part of the defendant to accord the plaintiff judicial relief.

Therefore, an order is being entered today denying the defendant's motion to dismiss the complaint upon the grounds of lack of jurisdiction, reserving, however, to the plaintiffs for a period of ten days the right to amend their complaint to state any additional grounds for relief.