575 F.2d 1367
 The AMERICAN ASSOCIATION OF COUNCILS OF MEDICAL STAFFS OF
PRIVATE HOSPITALS, INC., Plaintiff-Appellant,
v.
Joseph A. CALIFANO, Jr., Secretary of U. S. Department of
Health, Education and Welfare, Defendant-Appellee.
 No. 76-4156.
 United States Court of Appeals,
Fifth Circuit.
 July 7, 1978.
 
 Roy F. Guste, William J. Guste, III, John C. Saunders, Jr., New Orleans, La., for plaintiff-appellant.
 Ford J. Dieth, Asst. U. S. Atty., New Orleans, La., James C. Pyles, Atty., Dept. of H. E. W., Baltimore, Md., Gerald J. Gallinghouse, U. S. Atty., New Orleans, La., for defendant-appellee.
 Henry B. Alsobrook, New Orleans, La., for amicus curiae La. State Med. Society.
 Appeal from the United States District Court for the Eastern District of Louisiana.
 Before WISDOM, GEWIN and AINSWORTH, Circuit Judges.
 WISDOM, Circuit Judge:
 
 
 1
 The American Association of Councils of Medical Staffs of Private Hospitals (CMS) filed suit on behalf of its physician members challenging certain federal regulations. These regulations, promulgated under the Medicare Act, 42 U.S.C. § 1395 et seq., control the manner in which participating hospitals review their physicians' efforts. The district court held that it had jurisdiction, and found against the plaintiff-appellant on the merits. We find there is no subject matter jurisdiction, and vacate the judgment below without prejudice to CMS to file other appropriate proceedings.
 
 I.
 
 2
 Title XVIII of the Social Security Act establishes the Medicare program. Part A of that program provides hospital insurance for the aged and certain disabled individuals of any age. The government undertakes to reimburse authorized "providers of services" for a covered beneficiary's health costs. These providers include hospitals, skilled nursing facilities, and home health agencies, but not individual physicians. 42 U.S.C. § 1395x(u).
 
 
 3
 Congress feared that the existence of a federal blank check would lead providers to use their resources inefficiently. To avoid that, the Act requires that each hospital or skilled nursing facility must have in effect a "utilization review plan" to qualify as a provider. 42 U.S.C. § 1395x(e)(6), (j)(8). A "sufficient" plan reviews the admissions to a facility, the duration of stays, and the professional services, including drugs, furnished the patients to determine both the medical necessity for the actions and their effects on the efficiency of the facility. The statute specifies the composition of the reviewing group.
 
 
 4
 "(k) A utilization review plan . . . shall be considered sufficient . . . if it provides (2) for such review to be made by either (A) a staff committee of the institution composed of two or more physicians, with or without participation of other professional personnel, or (B) a group outside the institution which is similarly composed and (i) which is established by the local medical society and some or all of the hospitals and skilled nursing facilities in the locality, or (ii) if (and for as long as) there has not been such a group which serves such institution, which is established in such other manner as may be approved by the Secretary . . . ."
 
 
 5
 42 U.S.C. § 1395x(k). If the institution is very small or lacks an organized medical staff, the review must be accomplished by the outside group or other method allowed in subsection (B). 42 U.S.C. § 1395x(k).
 
 
 6
 The Secretary of Health, Education, and Welfare has the authority to promulgate necessary regulations for the Medicare Act. 42 U.S.C. § 1395hh. The Secretary is given the power to authorize state health agencies to determine whether a facility may participate in Medicare as a provider. 42 U.S.C. § 1395aa(a). Under his general authority to promulgate regulations, the Secretary defined the composition of the review body in the alternative ways used by the statute. 20 C.F.R. § 405.1035(e)(1). In order to guide state agencies in their eligibility determinations, the Department's Bureau of Health Insurance produced the "State Operations Manual", known as HIM-7. Unlike the statute, and unlike the regulation, the section defining utilization review plans in HIM-7 specifies a preferred alternative.
 
 
 7
 "2510(a) In-House Committees Typically and preferably when a hospital has a sufficiently large staff the utilization review committee is, as in the words of the law, comprised of, 'a staff committee of the institution composed of two or more physicians with or without the participation of other professional personnel'."
 
 
 8
 HIM-7 acknowledged that the law provides an alternative, but authorizes that alternative only in limited situations.
 
 
 9
 "The law provides for alternate types of UR committees, where a facility does not have a sufficient number (two or more) of physicians on the house staff to serve on a UR committee."
 
 
 10
 HIM-7, § 2515(a). Section 2515(b) establishes a preference for smaller facilities to use outside committees sponsored by medical societies, rather than some "other manner as may be approved by the Secretary". Furthermore, that section advises state agencies to inform the facilities that any other plan is acceptable only until one of the preferred methods can be devised.
 
 
 11
 That mandate of the Secretary sparked this law suit. The composition of the utilization review committee must be approved, or the facility will not be an authorized "provider". Without authorization, the government will not reimburse it for any services provided to patients otherwise eligible for Medicare. Provider status is essential to most American private hospitals. CMS, representing doctors at private institutions, disapproves of the preferred method of review. It believes that in-house review committees waste physician time and lead to conflicts, ethical and personal, within the staff.
 
 
 12
 On October 1, 1975, CMS filed suit for declaratory and injunctive relief in the Eastern District of New Orleans. CMS pressed three arguments. It urged that the Secretary had no power to establish mandatory preferences among the methods allowed by the statute. It maintained that HIM-7 was promulgated in violation of the rule-making requirements of the Administrative Procedure Act. It argued that the requirement violated the doctors' due process rights, protected by the fifth amendment. The Secretary moved to dismiss; CMS moved for summary judgment. After a hearing on the motions, the district court granted summary judgment for the Secretary in November 1976. The trial court found that it had jurisdiction under § 10 of the Administrative Procedure Act. The court held that the regulation was not inconsistent with the statute; that it was an interpretive rule, outside the restrictions of the A.P.A.; and held that no constitutional violation existed. This appeal followed.
 
 II.
 
 13
 We cannot reach the merits on this appeal: the dispositive question is whether subject matter jurisdiction existed. The district court followed this and some other Courts of Appeals by holding that jurisdiction existed under § 10 of the A.P.A., 5 U.S.C. § 701-06. See Ortego v. Weinberger, 5 Cir. 1975, 516 F.2d 1005; Dr. John T. MacDonald Foundation, Inc. v. Califano, 5 Cir. 1976, 534 F.2d 633, modified on rehearing, 1977, 554 F.2d 714, rev'd en banc, 1978, 571 F.2d 328; Bradley v. Weinberger, 1 Cir. 1973, 483 F.2d 410; Deering Milliken, Inc. v. Johnston, 4 Cir. 1961, 295 F.2d 856; Sanders v. Weinberger, 7 Cir. 1975, 522 F.2d 1167, rev'd sub nom., Califano v. Sanders, 1977, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192; Brandt v. Hickel, 9 Cir. 1970, 427 F.2d 53; Brennan v. Udall, 10 Cir. 1967, 379 F.2d 803; Pickus v. United States Board of Parole, 1974, 165 U.S.App.D.C. 284, 507 F.2d 1107. The Supreme Court has now spoken to the contrary: "(T)he APA does not afford an implied grant of subject-matter jurisdiction permitting federal judicial review of agency action". Califano v. Sanders, 1977, 430 U.S. 99, 107, 97 S.Ct. 980, 985, 51 L.Ed.2d 192.
 
 
 14
 The district court held that general federal question jurisdiction was precluded by 42 U.S.C. § 1395ii. To find jurisdiction, we would have to reverse that holding.
 
 
 15
 The Medicare Act does not have its own section precluding judicial review. Instead, § 1395ii incorporates 42 U.S.C. § 405(h), which precludes review of decisions under Title II of the Social Security Act. That section reads:
 
 
 16
 "The findings and decisions of the Secretary after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Secretary, or any officer or employee thereof shall be brought under section 41 of Title 28 to recover on any claim arising under this subchapter."
 
 
 17
 (emphasis added) 42 U.S.C. § 405(h). Title II provides administrative and judicial review of the matters covered by § 405(h) through § 405(g). The Medicare Act incorporated § 405(h), precluding review, totally; it incorporated § 405(g), providing review, only in part.
 
 
 18
 "Any institution or agency dissatisfied with any determination by the Secretary that it is not a provider of services, or with any determination described in section 1395cc(b)(2) of this title (concerning termination by the Secretary of certain agreements), shall be entitled to a hearing thereon by the Secretary (after reasonable notice and opportunity for hearing) to the same extent as is provided in section 405(b) of this title, and to judicial review of the Secretary's final decision after such hearing as is provided in section 405(g) of this title."
 
 
 19
 42 U.S.C. § 1395ff(c). See also 42 U.S.C.A. § 1395oo (f) (West Supp.1977) (added in 1974).
 
 
 20
 The question of review of decisions apparently precluded by § 1395ii has been considered by several courts. The cases, however, have always been slightly different from this case. They have involved actions by providers complaining of reimbursement decisions and procedures. The Court of Claims ruled that it had jurisdiction as to questions of law and constitutional claims under 28 U.S.C. § 1491. Whitecliff, Inc. v. United States, Ct.Cl.1976, 536 F.2d 347, cert. den. 1977, 430 U.S. 969, 97 S.Ct. 1652, 52 L.Ed.2d 361. The Court of Appeals for the Eighth Circuit held that it had jurisdiction over constitutional issues only. St. Louis University v. Blue Cross Hospital Service, 8 Cir. 1976, 537 F.2d 283, cert. den. 1977, 429 U.S. 977, 97 S.Ct. 484, 50 L.Ed.2d 584. In the Second and Seventh Circuits the Courts of Appeals have held that they have no jurisdiction, but that the Court of Claims does. South Windsor Convalescent Home, Inc. v. Mathews, 2 Cir. 1976, 541 F.2d 910; Trinity Memorial Hospital of Cudahy, Inc. v. Associated Hospital Service, Inc., 7 Cir. 1977, 570 F.2d 660.[1]
 
 
 21
 This Court had taken an inconsistent position. In Gallo v. Mathews, 5 Cir. 1976, 534 F.2d 1137 (decided before Califano v. Sanders and relied upon by the district court here), the Court held that § 1395ii precluded review, but that § 10 of the A.P.A. provided it. In Dr. John T. MacDonald Foundation, Inc. v. Califano, 5 Cir. 1977, 554 F.2d 714, the panel's second opinion followed Califano v. Sanders and held that no A.P.A. jurisdiction existed. The Court held that § 1395ii was not intended to preclude judicial review of issues, constitutional or statutory, which could be reviewed in no other way.[2] We withheld deciding this case to await the result of this Court's reconsideration of MacDonald en banc. That decision, reported at 571 F.2d 328, resolves our major issue.
 
 
 22
 The Court en banc held that " § 405(h), incorporated into § 1395ii of the Medicare Act, precludes all review of the Secretary's decisions by federal district courts brought under § 1331". 571 F.2d at 331. The Court refused to find a distinction between § 405(h) in the Title II context and § 1395ii in the Medicare context because of the differing availability of review under § 405(g). Instead, it adopted the Supreme Court's position in Weinberger v. Salfi, 1975, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522, that neither statutory nor constitutional claims could be reviewed under the Act.
 
 
 23
 As a matter of statutory construction, the major difference between our case and MacDonald, as resolved by the en banc Court[3], is that these plaintiffs complain not of a decision denying reimbursement but of a regulation which does not affect reimbursement. Salfi, relied upon by the Court en banc, shows that distinction to be unimportant. In Salfi widows brought a class action challenging on constitutional grounds the statute's failure to cover certain women. The Court gave a broad reading to the third sentence of § 405(h) and held that it was "more than a codified requirement of administrative exhaustion". 422 U.S. at 757, 95 S.Ct. at 2463. It then distinguished Johnson v. Robison, 1974, 415 U.S. 361, 94 S.Ct. 1160, 39 L.Ed.2d 389. In that case a challenge was brought to a provision concerning veterans' benefits. The Court held that review of a statutory limitation was not precluded by a section providing that decisions of the Administrator
 
 
 24
 "on any question or law or fact . . . shall be final and conclusive and no other official or any court of the United States shall have power or jurisdiction to review any such decision . . . ."
 
 
 25
 38 U.S.C. § 211(a), quoted in Salfi, 422 U.S. at 761, 95 S.Ct. at 2465. The Court had found jurisdiction in Johnson, in spite of this language. The Salfi Court explained that while the Veterans' Administration statute precluded only review of decisions of the Administrator, § 405(h) extended to any action to recover on any claim. Thus, the fact that no administrative hearing or decision was involved in the instant case does not serve as a relevant distinction from MacDonald. This Court has decided that the Medicare Act withdraws jurisdiction from the district courts over actions like this one.
 
 
 26
 This construction of § 1395ii does not end our inquiry. We must determine whether this construction totally precludes judicial consideration of claims of CMS, statutory and constitutional. If it does, we must consider whether such preclusion itself violates the requirements of due process.
 
 
 27
 The question of Congressional power over jurisdiction is both ancient and difficult. It involves the most sensitive relationships between coequal branches of the federal government. Courts and commentators have long discussed the issue.[4] While many commentators may have decided it, it is fair to say that the Supreme Court has not. Under MacDonald, this Court can only say:
 
 
 28
 "Happily, we need resolve neither Congress' intent to preclude review of constitutional claims nor the constitutionality of a statute so construed. We would face these issues only if all avenues of review were precluded. In Whitecliff, however, the Court of Claims determined it to have jurisdiction to review claims arising under the Medicare Act."
 
 
 29
 571 F.2d at 332.
 
 
 30
 This particular suit cannot be brought in the Court of Claims. Its jurisdiction is founded on 28 U.S.C. § 1491, which was never part of the section 41 of title 28 mentioned in § 405(h). It has jurisdiction over claims against the United States, without limitation as to jurisdictional amount.[5] That Court cannot provide the equitable or declaratory relief sought in this suit. United States v. Alire, 1868, 73 U.S. 573, 6 Wall. 573, 18 L.Ed. 947; United States v. Jones, 1886, 131 U.S. 1, 9 S.Ct. 669, 33 L.Ed. 90; United States v. King, 1969, 395 U.S. 1, 89 S.Ct. 1501, 23 L.Ed.2d 52. Nevertheless, the issue raised by the plaintiff could be heard by that Court if CMS can state a claim for damages or at least for nominal damages.[6] Only the relief granted would be different, and Congress has power over the relief granted suitors against the United States and its officers.[7]
 
 
 31
 The resolution we have reached is not pleasant. CMS has waited nearly three years for the resolution of its suit. The parties have briefed and argued their cases. When the suit was filed, before Califano v. Sanders and before MacDonald, the action gave no sign of being appropriate for the Court of Claims. Now, we must deny both parties a decision on the merits where at least one argument is substantial. But the alternative is to find that Congress cannot cut off our jurisdiction over these issues while providing another court, the Court of Claims, to hear the issues. That is a decision we cannot make. Moreover, we respect the ingenuity of lawyers. We do not exclude the possibility of plaintiff's counsel casting an action in terms of mandamus that might resolve what is obviously an important issue to the private hospitals in this country.
 
 
 32
 The decision of the district court is vacated, and this suit is remanded for dismissal without prejudice to the plaintiff to file other appropriate proceedings.
 
 
 33
 Vacated and remanded.
 
 
 
 [1]
 The District of Columbia Circuit has also held that subject matter jurisdiction does not attach to claims under the Medicare Act. Ass'n of American Medical Colleges v. Califano, 1977, 186 U.S.App.D.C. ---, 569 F.2d 101. That case, however, involved a provider's claim for reimbursement and was brought after the amendments to § 1395oo created administrative and judicial review of such claims. Therefore, that Court did not face a situation where denial of federal question jurisdiction might preclude any judicial review
 The First Circuit considered § 1395ii before Califano v. Sanders. It avoided the question of federal question jurisdiction by finding jurisdiction under the A.P.A., which it held was not precluded by § 1395ii. Adams Nursing Home of Williamstown, Inc. v. Mathews, 1 Cir. 1977, 548 F.2d 1077.
 Many district courts have considered the effect of § 1395ii. In Mid Atlantic Nephrology Center, Ltd. v. Califano, D.Md.1977, 433 F.Supp. 23, Judge Thomsen held that, in the absence of any other judicial review, § 1395ii did not preclude federal question jurisdiction over a challenge to Departmental action. The court distinguished its case from most provider cases because the plaintiff was not making a claim for benefits, but instead was seeking injunctive relief "to compel HEW to abide by its own regulations". In Humana of South Carolina, Inc. v. Mathews, D.D.C.1976, 419 F.Supp. 253, the court found jurisdiction by reading § 405(h) as applying only after an administrative hearing. In St. Elizabeth Hospital v. Califano, E.D.Ky.1977, 441 F.Supp. 158, the court held that it had no federal question jurisdiction. In Chelsea Community Hospital v. Michigan Blue Cross, E.D.Mich.1977, 436 F.Supp. 1050, the court held that review of statutory issues was precluded. The court was troubled by the thought that jurisdiction for constitutional issues might be completely foreclosed. It assumed that jurisdiction existed and found the constitutional claims without merit. In Medical Center of Independence v. Califano, W.D.Mo.1977, 433 F.Supp. 837, the court held that it had no federal question jurisdiction over pre-1973 claims. The court also held that § 1395ii foreclosed mandamus jurisdiction under 28 U.S.C. § 1361. In Pacific Coast Medical Enterprises v. Califano, C.D.Cal.1977, 440 F.Supp. 296, the court held that the statute prevented review of statutory issues, but not constitutional issues. It held, however, that the issues cast by the plaintiff in due process terms were in fact statutory issues. That court found mandamus was unavailable because the case was not proper for such relief under the general standards applied to mandamus petitions. A unique approach was taken by the district court in Umedco, Inc. v. Califano, C.D.Cal., June 9, 1977, Civ. No. 76-104-HP. That court distinguished Salfi as applying only to beneficiaries' claims. It held that it should not apply to providers' claims, and found jurisdiction to consider any constitutional issues.
 
 
 [2]
 The panel reached this conclusion with some reluctance. "We (find jurisdiction) realizing that our construction is strained . . . ." 554 F.2d at 718. Judge Clark dissented, holding that Congressional failure to incorporate more of § 405(g) was not a mistake, but a conscious and permissible choice to limit review
 
 
 [3]
 The MacDonald case could have been distinguished from this case because it dealt with a provider who could seek relief for periods after 1973 through the amendments to § 1395oo. The second panel opinion seems to read the amendments as Congressional correction of an oversight. 554 F.2d at 716. The Court en banc did not consider the amendments significant in construing the preclusion statute
 
 
 [4]
 The Court has recently expressed doubts about the constitutionality of foreclosing all review of constitutional issues
 "There is another reason why Johnson v. Robison is inapposite. It was expressly based, at least in part, on the fact that if § 211(a) reached constitutional challenges to statutory limitations, then absolutely no judicial consideration of the issue would be available. Not only would such a restriction have been extraordinary, such that 'clear and convincing' evidence would be required before we would ascribe such intent to Congress, (citations omitted) but it would have raised a serious constitutional question of the validity of the statute as so construed."
 Weinberger v. Salfi, 422 U.S. at 762, 95 S.Ct. at 2465.
 A thorough discussion of this whole area is found in P. Bator, P. Mishkin, D. Shapiro, and H. Wechsler, The Federal Courts and the Federal System, Note on the Power of Congress to Limit the Jurisdiction of Federal Courts, 313-375 (2d ed. 1973). See also Caulfield v. U. S. Dept. of Agriculture, 5 Cir. 1961, 293 F.2d 217 (en banc); K. Davis, Administrative Law in the Seventies, § 2809 (1976); L. Jaffe, Judicial Control of Administrative Action, 376-94 (1965).
 
 
 [5]
 The Tucker Act also provides concurrent jurisdiction in the district courts for claims of less than $10,000. 28 U.S.C. § 1346(a). The district courts would not have such jurisdiction over this claim, however, because § 1346(a) was part of section 41, and hence is within the language of § 405(h)
 
 
 [6]
 For example, violation of due process rights, standing alone, has been held to found a claim for nominal damages. Carey v. Piphus, 1978, --- U.S. ----, 98 S.Ct. 1042, 55 L.Ed.2d 252. This plaintiff also alleges that its members' time is being wasted in violation of their constitutional rights. Therefore, a successful action would also involve actual damages. We note the plaintiff alleged that more than $10,000 was in controversy
 
 
 [7]
 Congress could refuse to waive sovereign immunity at all, and deny all litigants against the United States any remedies. It may also restrict parties seeking to litigate certain claims to specified courts, even if the claims are of constitutional magnitude. See Yakus v. United States, 1944, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834, where the Court held that a constitutional challenge to wage and price controls could not be brought in the Emergency Court of Appeals. Cf. Morris v. Gressette, 1977, 432 U.S. 491, 97 S.Ct. 2411, 53 L.Ed.2d 506, which held that the decision of the Attorney General under the Voting Rights Act was not subject to judicial review. The statute provided that review of changes in a state's electoral system was proper either through a declaratory judgment action in the District of Columbia, or through submission to the Attorney General. Congress may also limit the availability of equitable relief in federal courts to private parties in suits against other private parties. The Norris-LaGuardia Act, restricting the use of federal injunctions in labor disputes, is a prime example. 29 U.S.C. §§ 101-115. See Lauf v. E. G. Shinner & Co., 1938, 303 U.S. 323, 58 S.Ct. 578, 82 L.Ed. 872. Remedies against the government have been limited in the context of Selective Service cases, although those cases do not easily lend themselves to a consistent interpretation. See generally Federal Courts and the Federal System at 365-72. The federal courts are also barred from issuing injunctions against the collection of federal taxes. Litigants are left to either refund suits or suits in the tax court. 26 U.S.C. § 7421