**UNITED STATES of America**

v.

**Alfred R. LAPIN.**

**Civ. No. K–77–2123.**

United States District Court,
D. Maryland.

Aug. 8, 1979.

Russell T. Baker, Jr., U.S. Atty., Gale E. Rasin, Asst. U.S. Atty. and Jo M. Glasco, Baltimore, Md., for plaintiff.

R. Douglas Jones, and Patrick G. Cullen, Baltimore, Md., and Mark P. Friedlander, Sr., Mark P. Friedlander, Jr., and Friedlander, Friedlander & Brooks, Arlington, Va., for defendant.

## MEMORANDUM AND ORDER

FRANK A. KAUFMAN, District Judge.

The Government instituted this action pursuant to Title XVIII of the Social Security Act (Medicare), 42 U.S.C. § 1395 *et. seq.*,[1] to recover alleged overpayments to defendant under Part B of said act after an administrative hearing officer held that defendant had received such overpayments. The overpayments grew out of reimbursements to defendant for services performed by non-certified physicians conducting patient visits at defendant's health care facilities. Defendant, in this Court, pointed to alleged errors by the hearing officer during the administrative hearing and filed a counterclaim alleging that the Government owed defendant certain sums under Part A of the Act, for the use of extended care facilities, and also under Part B, for medical services rendered by physicians at those facilities. Defendant subsequently withdrew his counterclaim under Part A. By Memorandum and Order filed August 22, 1978, this Court ordered a supplemental hearing so that certain issues could be presented to and determined by the hearing officer. The hearing officer entered a Supplemental Memorandum Ruling on February 13, 1979.

Defendant alleges that he has not yet received a fair administrative hearing. The Government has moved for summary judgment.

---

1. The Medicare Act consists of two components: Part A, 42 U.S.C. §§ 1395c–1395i, provides hospital insurance benefits; Part B, 42 U.S.C. §§ 1395j–1395w, provides a voluntary supplementary medical insurance program, primarily for physicians' services.

Judicial review of administrative determinations under the Medicare Act is governed by 42 U.S.C. § 1395ff which provides as follows:

(a) The determination of whether an individual is entitled to benefits under part A or part B of this subchapter, and the determination of the amount of benefits under part A of this subchapter, shall be made by the Secretary in accordance with regulations prescribed by him.

(b)(1) Any individual dissatisfied with any determination under subsection (a) of this section as to—

(A) whether he meets the conditions of section 426 or 426a of this title [eligibility for hospital insurance benefits], or

(B) whether he is eligible to enroll and has enrolled pursuant to the provisions of part B of this subchapter, or section 1395i–2 of this title [eligibility for hospital insurance for the uninsured] or section 1819, or

(C) the *amount of benefits under part A* of this subchapter (including a determination where such amount is determined to be zero)

shall be entitled to a hearing thereon by the Secretary to the same extent as is provided in section 405(b) of this title [administrative findings of fact] and to judicial review of the Secretary's final decision after such hearing as is provided in section 405(g) of this title. [Emphases supplied.] [2]

There is no reference whatsoever to any review procedures for an administrative determination as to the *amount of* benefits under Part B in both sections 1395ff and 405(g).[3] Further, 42 U.S.C. § 405(h)[4] provides that "[n]o findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided."[5]

The legislative history of the Medicare Act indicates that Congress intended to preclude district court jurisdiction over disputes concerning the amount of Part B benefits.

The committee's bill provides for the Secretary to make determinations, under both the hospital insurance plan and the supplementary plan, as to whether individuals are entitled to hospital insurance benefits or supplementary medical insurance benefits and for hearings by the Secretary and judicial review where an individual is dissatisfied with the Secretary's determination. Hearings and judicial review are also provided for where an individual is dissatisfied with a determination as to the amount of benefits under the hospital insurance plan if the amount in controversy is $1,000 or more. (Under the supplementary plan, carriers, not the Secretary, would review beneficiary complaints regarding the amount of benefits, and the bill does not provide for judicial review of a determination concerning the amount of benefits under Part B where claims will probably be for substantially smaller amounts than under Part A.) [Report of the Committee of Finance, S.Rep.No.404, Part I, 89th Cong., 1st Sess. 54–55 (1965).]

---

**2.** 42 U.S.C. § 405(g) provides:

Any individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days .... * * * The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing. The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive .... * * * The judgment of the court shall be final except that it shall be subject to review in the same manner as a judgment in other civil actions. * * *

**3.** *See* n.2 *supra.*

**4.** 42 U.S.C. § 1395ii provides:

The provisions of ... subsections ... (h) of section 405 of this title, shall also apply with respect to this subchapter to the same extent as they are applicable with respect to subchapter II of this chapter.

**5.** That is, as provided in 42 U.S.C. § 405(g). *See* n.2 *supra.*

In 1972, Congress amended the review provisions of section 1395ff.[6] The amendments made it clear that an individual could receive judicial review as to whether he was "eligible" to participate in Part A and Part B but review as to the amount received after eligibility was limited to Part A claims of $1000 or more.[7] Senator Bennett commented:

> [T]he purpose of the amendment is to make sure existing law, which gives the right to a person to go to court on the question of eligibility to receive welfare [i. e., Medicare benefits], is not interpreted to mean he can take the question of the federal claim to court. If he did we would never have an end to it. This is to reconfirm the original intention of the law that the courts can determine only eligibility. * * * The law refers to "entitlement" as being an issue subject to court review and the word was intended to mean eligibility to any benefits of Medicare but not to decisions on the claim for payment for a given service. [118 Cong.Rec. 33992 (Oct. 5, 1972).]

The Administrative Procedure Act (APA), 5 U.S.C. §§ 701–06, provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action . . . is entitled to judicial review thereof" (§ 702), "except to the extent that—(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." (§ 701(a)). The APA, however, "does not afford an implied grant of subject-matter jurisdiction permitting federal judicial review of agency action." *Califano v. Sanders*, 430 U.S. 99, 107, 97 S.Ct. 980, 985, 51 L.Ed.2d 192 (1977).[8] Thus, even if the Medicare Act does not preclude judicial re-

view under the APA or otherwise of Part B claims, this Court's jurisdiction must be derived from a source other than the APA.

In *Weinberger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), Mr. Justice Rehnquist held that section 405(h) of the Social Security Act "prevent[s] review of decisions of the Secretary save as provided in the Act, which provision is made in § 405(g)" (at 757) and that "the District Court did not have jurisdiction . . . under 28 U.S.C. § 1331" (at 753, 95 S.Ct. at 2461).[9] Although *Salfi* arose under Title II of the Social Security Act, it is equally instructive as to Title XVIII.[10]

The limited availability of judicial review of Part B claims has been aptly defined by Judge Bright in *St. Louis Univ. v. Blue Cross Hosp. Serv.*, 537 F.2d 283, 290 (8th Cir. 1976), as follows:

> The conspicuous omission of any provision for judicial review of the *amount* of benefits under part B indicates that Congress felt that determination of the proper "reasonable charge" was a matter best left to agency expertise. *Cf. Schilling v. Rogers*, 363 U.S. 666, 674 [, 80 S.Ct. 1288, 1294, 4 L.Ed.2d 1478] (1960).
>
> Our view is strengthened by the emphatic language of § 405(h) which . . . completely eliminated all then existing jurisdictional bases for judicial review. This demonstrates a congressional intent to commit maximum discretion to the Secretary. [Emphasis in original.]

■■■ Defendant does not appear to question that the Medicare Act, its legislative history, and the case law deprive this Court of jurisdiction under any statute, whether it be 28 U.S.C. § 1331 or the APA or other provision of law, to review the administrative hearing officer's determina-

---

6. Section 222, Social Security Amendments of 1972, Pub.L. 92–603, 86 Stat. 1329.

7. *See* 42 U.S.C. § 1395ff.

8. *Cf. St. Louis Univ. v. Blue Cross Hosp. Serv.*, 537 F.2d 283 (8th Cir. 1976); *Ortego v. Weinberger*, 516 F.2d 1005 (5th Cir. 1975).

9. *See Dr. John T. MacDonald Foundation, Inc. v. Mathews*, 571 F.2d 328 (5th Cir. 1978) (en banc); *Am. Assoc. of Councils of Medical Staff*

*v. Califano*, 575 F.2d 1367 (5th Cir. 1978); *Gallo v. Mathews*, 538 F.2d 1148 (5th Cir. 1976); *Ortego v. Weinberger*, 516 F.2d 1005 (5th Cir. 1975); *St. Louis Univ. v. Blue Cross Hosp. Serv.*, 537 F.2d 283 (8th Cir. 1967); *Kuenstler v. Occidental Life Ins. Co.*, 292 F.Supp. 532, 536 (C.D.Cal.1968).

10. *See* § 1395ii, *supra* n.4.

tion as to the amounts owing under Part B. However, defendant still contends that this Court has jurisdiction to review the record below, to determine that there was not sufficient evidence upon which the hearing officer could make the determination as to the amounts of Part B benefits to which defendant is entitled, and to remand for further administrative hearings. That contention would, in and of itself, permit review by this Court concerning the amount of Part B benefits and would successfully circumvent this Court's lack of jurisdiction to review disputed amounts under Part B. Surely, circumvention would so result because this Court does not have jurisdiction to review the hearing officer's determination as to amount and thus need not and may not apply a substantial evidence test on review. However, even assuming that this Court could so review in this case and even assuming that the burden at the administrative hearing was upon the Government to prove its case by a preponderance of the evidence, there was an abundance of evidence upon which the hearing officer *could have supported* her decision as to the amounts of Part B benefits payable to defendant. The difficulty at this juncture of this case is that there remain a number of issues which have not been fully dealt with by the hearing officer.

The Medicare Act requires a fair hearing of disputed claims. 42 U.S.C. § 1395u(b)(3)(C). The hearing officer must "inquire fully into the matters at issue and shall receive into evidence the testimony of witnesses and any documents which are relevant and material to such matters." 42 C.F.R. § 405.830(a). The hearing officer has the duty of making his decision "based upon the evidence adduced at the hearing or otherwise included in the hearing record." 42 C.F.R. § 405.834. There is no suggestion whatsoever that the hearing officer in this case was biased or acted improperly.[11]

However, it is not clear as to what statistical methods were used by the hearing officer in determining the amount of overpayment. Nor are the following questions susceptible of clear answers by a review of the record:

1. Why is the percentage recoupment of overpayment based on amounts billed during a twenty-four month period and not during the fifteen-month period during which the non-certified physicians were apparently present? (*See* ¶ 7 of Final Ruling on the Claim in Supplemental Memorandum Ruling).

2. Why were all patient visits stamped with defendant's facsimile signature stamp or block signature stamp rejected as improperly documented in view of the hearing officer's apparent concession that "he must have made daily rounds and probably examined some of the patients"? (*See* ¶ 4 of Final Ruling on the Claim in Supplemental Memorandum Ruling).

3. If the carrier cannot provide the basic statistics concerning amounts billed by defendant and claims denied by the carrier for 1967, 1968, and 1969, how can the hearing officer and/or the Secretary sustain the carrier's claim for a substantial overpayment? (*See* ¶ 8 of Final Ruling on the Claim in Supplemental Memorandum Ruling).

4. Why was the carrier authorized to reduce defendant's charges from $10.00 to $7.00 per visit during the second half of 1968? (*See* ¶ 13 of the Final Ruling on the Claim in Supplemental Memorandum Ruling).

While this Court, as set forth *supra*, lacks jurisdiction under either the APA or § 1331 to review the amount of the alleged overpayment to defendant, the question arises as to whether this Court possesses limited jurisdiction for purposes of granting injunc-

---

11. Defendant contends that certain evidence presented by him was not rebutted by the Government and therefore should have been accepted by the hearing officer. However, it was clearly within the hearing officer's capacity to consider the reliability and the credibility of such testimony. Given the documentary evidence presented by the Government, the hearing officer apparently discredited much of the defendant's testimony in favor of the documentary evidence against him.

tive-type relief. In *Mid Atlantic Nephrology Ctr., Ltd. v. Califano,* 433 F.Supp. 23 (D.Md.1977), Judge Thomsen wrote: "This Court concludes that although the question is a close one, jurisdiction under § 1331 exists over a suit ... against the Secretary [of HEW] for injunctive relief where no statutory review of the challenged action is available to the plaintiff" (at 32). *But see Am. Assoc. of Councils of Medical Staffs v. Califano,* 575 F.2d 1367 (5th Cir. 1978). In this case, this Court considers defendant's quest for a remand to have the hearing officer clarify her disposition of this case to be in effect a petition for this Court not to permit enforcement of the hearing officer's decision until certain matters are more fully developed and clarified by the hearing officer. So considered, this Court hereby grants defendant's petition for such relief, and hereby remands the within case to the hearing officer for further clarification. It is hereby noted that counsel for the Government has not objected to such remand and that defendant's counsel has actively sought the same. It is also hereby noted that counsel for defendant have stated, on the record, that they are aware that in requesting this remand to the hearing officer, defendant assumes the risk that the amount of the overpayment may rise as well as fall, but that defendant still desires this remand. After the hearing officer sets forth the statistical method used and clarifies the above issues, either party may appeal to the Secretary and, thereafter, if either party so desires, to this Court. If there is a further appeal to this Court, this Court will limit its consideration upon such appeal to the issues addressed to the hearing officer on remand.

Counsel for defendant may file a supplemental memorandum with the hearing officer on or before August 20, 1979; the Government is required to file a responsive memorandum on or before August 28, 1979; and defendant is afforded the opportunity to file a rebuttal memorandum on or before September 5, 1979. The hearing officer may, in her discretion, hold or not hold a further supplemental hearing and grant both sides an opportunity to be heard orally on the questions presented herein. The

hearing officer shall hold any such supplemental hearing and render her clarification of the above issues on or before October 8, 1979.