Stephen ALEXANDER and Bernard Dunne, On Their Behalf and On Behalf of All Others Similarly Situated

v.

Richard S. SCHWEICKER Secretary, United States Department of Health and Human Services.

No. H–80–2.

United States District Court, D. Connecticut.

March 23, 1981.

William A. Dombi, Connecticut Legal Services, Inc., Legal Assistance to Medicare Patients, Willimantic, Conn., for plaintiffs.

George J. Kelly, Jr., Asst. U. S. Atty., Richard Blumenthal, U. S. Atty., Hartford, Conn., Clifford Pierce, Asst. Regional Atty. (Region I) Dept. of Health and Human Services, Boston, Mass., for defendant.

## RULING ON PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

JOSÉ A. CABRANES, District Judge:

In this action, plaintiffs challenge the method adopted by the Secretary of Health and Human Services (the "Secretary") for computing the annual $60.00 "deductible" [1] which claimants must incur before they become entitled to medical insurance payments under Part B of the Health Insurance for the Aged Act, 42 U.S.C. §§ 1395–1395rr (the "Medicare Act"). Specifically, plaintiffs object to the Secretary's policy and practice of applying the officially-approved "reasonable charge" for physicians' services,[2] rather than the actual charge for such services, toward a Part B beneficiary's annual deductible. *See* Health Care Financing Administrations's Carrier Manual ("*Manual*"), HIM–14, Section 2450, attached to Complaint of Intervenor Bernard

---

1. The Part B deductible is provided for in 42 U.S.C. § 1395*l*(b). When the Medicare program was established in 1965 under Title XVIII of the Social Security Act, the annual deductible for the Part B program was $50. *See* Pub.L. 89–97, Section 1833(b), *reprinted at* [1965] *U.S.Code Cong. and Adm.News* 324. The deductible was raised to the current $60 as part of the 1972 amendments to the Medicare Act. *See* Pub.L. 92–603, Section 204(a), *reprinted* at [1972] *U.S.Code Cong. and Adm. News* 1608; *see also* Health Care Financing Administrations's Carrier Manual, HIM–14, § 2450, attached to Complaint of Intervenor Bernard V. Dunne as Exhibit II.

2. Plaintiffs appear to object to the Secretary's policy as it applies to charges for physicians' services as well as to charges for other Part B services. *See* Complaint of Plaintiff Stephen Alexander ("Complaint") at ¶¶ 1, 6, and Prayer for Relief of Plaintiff Stephen Alexander ("Prayer for Relief") at ¶¶ 3, 5, 6.

V. Dunne as Exhibit II. 42 U.S.C. §§ 1395*l*(a), 1395*l*(b), 1395u(a), 1395u(b)(3); 42 C.F.R. §§ 405.501–405.501–405.511.[3] Jurisdiction is alleged under 28 U.S.C. § 1331 (general federal question jurisdiction) and 28 U.S.C. § 1361 (mandamus jurisdiction). Now before the court are the plaintiffs' motion for partial summary judgment on the issue of whether defendant's policy and practice violate the Medicare Act and the defendant's motion to dismiss this action on the grounds that the court lacks jurisdiction over the subject matter, Rule 12(b)(1), Fed. R.Civ.P., or in the alternative, for summary judgment on all of the claims asserted by the plaintiffs in their complaint, Rule 56, Fed.R.Civ.P.

To the extent that the plaintiffs' challenge to the Secretary's administration of the Medicare Part B program constitutes a claim "arising under" the Medicare Act, this court may lack jurisdiction over the subject matter grounded on 28 U.S.C. § 1331.[4] *See* Section 1872 of the Medicare Act, 42 U.S.C.

3. Plaintiffs claim that "[a]s a result of the statutorily mandated methodology employed in determining customary and prevailing charges, the Medicare-approved 'reasonable charge' is generally lower than the physician's actual charge, and less than the expenses incurred by the beneficiary." Complaint ¶ 9. They allege that the Secretary's practice of applying reasonable rather than actual charges toward the annual deductible results in an unlawful denial or reduction of Part B benefits since "the Medicare beneficiary must incur expenses higher than the current $60.00 deductible before payment of benefits begins." *Id.* ¶ 1. Plaintiffs claim that the Secretary's policy violates § 1395*l*(b) of the Medicare Act, which provides in relevant part that "the total amount of the expenses incurred ... shall be reduced by [an annual] deductible of $60," *see* 42 U.S.C. § 1395*l*(b), Complaint ¶¶ 17–18; that it violates the Due Process Clause of the Fifth Amendment, *id.* ¶¶ 19–20; and that it was promulgated and published in violation of the Administrative Procedure Act, 5 U.S.C. § 552(a)(1)(D), *id.* ¶¶ 21–23.

The suit was originally pleaded as a class action on behalf of "all Medicare Part B beneficiaries in the United States who, since 1967, have been denied benefits or who have had benefits reduced through application of the Medicare-approved 'reasonable charge' towards the annual Part B deductible, rather than· the actual expenses incurred." Complaint ¶ 6. Plaintiffs recently moved to amend their motion for class certification. Plaintiffs now seek to bring this suit as a class action on behalf of "all Medicare Part B beneficiaries in the United States, who, since the date of filing of this action [on January 2, 1980], have been or will be denied benefits or who have had or will have benefits reduced through application of the Medicare approved 'reasonable charge' toward the annual Part B deductible, rather than the actual expenses incurred." Amended Motion for Certification of Class, dated February 6, 1981. No class has yet been certified.

Plaintiffs seek a declaratory judgment that the Secretary's "policy and practice of applying the Medicare-approved 'reasonable charge' for physicians' services towards a Medicare benefi-ciary's annual deductible, rather than applying the amount of expenses incurred, violates the Medicare Act, the Administrative Procedure Act and the Due Process Clause of the Fifth Amendment to the United States Constitution," Complaint, Prayer for Relief ¶ 3; a declaratory judgment that the Secretary's "failure to properly publish the policy ... renders th[e] policy void, invalid and of no effect," *id.* ¶ 4; an order directing the Secretary to "reopen and revise the claims for coverage of Plaintiff[s] and the class [they] represent, applying towards the annual deductible the actual expenses incurred ..." *id.*, ¶ 5; and a preliminary and permanent injunction enjoining the Secretary from "denying or reducing Medicare Part B benefit·payments by applying the Medicare-approved 'reasonable charge' for physicians' services toward a beneficiary's annual deductible ...." *id.* ¶ 6.

4. 28 U.S.C. § 1331 provides:

The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

*See* Federal Question Jurisdictional Amendments Act of 1980, Pub.L.No.96–486, 94 Stat. 2369, 49 U.S.L.W. 196 (Jan. 13, 1981), *amending* 28 U.S.C. § 1331. *See generally Ellis v. Blum*, 643 F.2d 68, 70 & n.1 No. 80–6133 (2d Cir. 1981).

28 U.S.C. § 1331 is one of the two statutes which, under 42 U.S.C. § 405(h), may not form the basis for judicial review of a claim arising under the Social Security Act. See note 5, *infra*, and accompanying text. The other is 28 U.S.C. § 1346, which provides for the concurrent jurisdiction of district courts and the Court of Claims. 28 U.S.C. § 1346 provides in relevant part:

(a) The district courts shall have original jurisdiction, concurrent with the Court of Claims, of:

　　.　　.　　.　　.　　.

(2) Any ... civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department ....

§ 1395ii, *incorporating* Section 205(h) of the Social Security Act, 42 U.S.C. § 405(h) (explicitly prohibiting, *inter alia*, any judicial action under 28 U.S.C. § 1331 "to recover on any claim arising under" the Federal old-age, survivors and disability insurance program).[5]

■ As it happens, we are spared the necessity of having to decide whether there is jurisdiction in this case under 28 U.S.C. § 1331, because plaintiffs have not been content to rely exclusively, or even primarily, on general federal question jurisdiction. They have vigorously invoked the jurisdiction of the court "in the nature of manda-

mus to compel an officer . . . of the United States or any agency thereof to perform a duty owed to the plaintiff," 28 U.S.C. § 1361, and it is now clear in this Circuit that under this statute, added by the Mandamus and Venue Act of 1962, 76 Stat. 744, "jurisdiction will lie to review procedures employed in administering social security benefits," *Ellis v. Blum*, 643 F.2d 68, 78 (2d Cir. February 18, 1981) (Friendly, J.); "the availability of mandamus jurisdiction over the Secretary to entertain procedural challenges [exists] despite § 405(h) . . . ." *Id.* at 79.[6] *See generally, id.* at 79; Byse and Fiocca, *Section 1361 of the Mandamus and*

---

5. 42 U.S.C. § 405(h) provides:

> The findings and decisions of the Secretary after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided. *No action against the United States, the Secretary, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.*

*See* note 4, *supra*, and accompanying text. It has been suggested that in cases where jurisdiction is claimed exclusively under 28 U.S.C. § 1331, denial of jurisdiction under that statute would not necessarily preclude all federal court review of a plaintiff's claims that there has not been compliance with statutory or constitutional provisions, because review of such challenges to the Secretary's administration of the statute would be available in the Court of Claims under 28 U.S.C. § 1491. Section 1491 provides, in relevant part:

> The Court of Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort. . . . In any case within its jurisdiction, the court shall have the power to remand appropriate matters to any administrative or executive body or official with such direction as it may deem proper and just. . . .

*See South Windsor Convalescent Home, Inc. v. Mathews*, 541 F.2d 910, 914 (2d Cir. 1976); *American Association of Councils of Medical Staffs v. Califano*, 575 F.2d 1367, 1373 (5th Cir. 1978), *cert. denied*, 439 U.S. 1114, 99 S.Ct. 1018, 59 L.Ed.2d 72 (1979), *rehearing denied*, 440 U.S. 951, 99 S.Ct. 1434, 59 L.Ed.2d 641 (1979); *Dr. John T. MacDonald Foundation, Inc. v. Califano*, 571 F.2d 328, 332 (5th Cir.), *cert. denied*, 439 U.S. 893, 99 S.Ct. 250, 58

L.Ed.2d 238 (1978); *Cf. Erika, Inc. v. United States*, 634 F.2d 580, 587–88 (Ct.Cl.1980) (Friedman, C. J.); *Whitecliff, Inc. v. United States*, 536 F.2d 347, 350–51 (Ct.Cl.1976), *cert. denied*, 430 U.S. 969, 97 S.Ct. 1652, 52 L.Ed.2d 351 (1977). The Court of Claims may award statutory benefits to claimants denied benefits on the basis of unconstitutional provisions in a statute. *See United States v. Lovett*, 328 U.S. 303, 66 S.Ct. 1073, 90 L.Ed. 1252 (1946); *Gentry v. United States*, 546 F.2d 343, 346 (Ct.Cl. 1976). *But see generally St. Louis University v. Blue Cross Hospital Service*, 537 F.2d 283, 291–92 (8th Cir.), *cert. denied*, 429 U.S. 977, 97 S.Ct. 484, 50 L.Ed.2d 584 (1976) (42 U.S.C. § 405(h) bars only actions "to recover on any claim arising under" the Social Security Act and does not preclude actions contesting the constitutionality of certain procedures established by the Secretary).

6. The Court of Appeals has distinguished between "procedural challenges" and "procedural claims" on the one hand and "claims 'to recover' benefits" on the other. *Ellis v. Blum, supra*, at 79, 82. By "procedural challenges" or "procedural claims" the court meant "an attack on procedures of the Secretary . . . which operate prior to the time that any decision to deny or to approve a claim is reached." *Id.* at 82 n.15. Nothing in *Ellis* suggests that the availability of 28 U.S.C. § 1361 for judicial review of such "procedural challenges" or "procedural claims" would permit judicial review of what another court has recently described as the "large number of small individual claims seeking greater reimbursement," *Erika, Inc. v. United States*, 634 F.2d 580, 588 (Ct.Cl.1980). "The fair import" of the legislative history of the Medicare Act, Chief Judge Friedman has recently noted, "is that Congress intended to bar judicial review of the amount of a particular benefit determination—as, for example, a carrier's determination that $50 rather than the $100 a physician charged was a reasonable amount for the

*Venue Act of 1962 and "Nonstatutory" Judicial Review of Federal Administrative Action*, 81 Harv.L.Rev. 308 (1967). Moreover, our Court of Appeals has also recently observed that "determination of mandamus jurisdiction necessarily encompasses on-the-merits analysis of whether a mandamus writ should issue," *CETA Workers' Organizing Committee v. City of New York*, 617 F.2d 926, 936 (2d Cir. 1980). In these circumstances the court must consider whether the Secretary's interpretation and implementation of the Medicare Act in any way conflict with requirements laid down by Congress or by the Constitution of the United States.

The on-the-merits analysis required by the invocation of 28 U.S.C. § 1361 leads the court to conclude that, in the present case, the Secretary has not failed to perform a duty that the Constitution or Congress required him to perform. The constitutional and statutory analysis undertaken by the court is necessarily the same as the analysis the court would have performed if it had considered this action under the general federal question jurisdiction statute, 28 U.S.C. § 1331, and the court's conclusions are likewise identical. Accordingly, the defendant's motion for summary judgment is granted.

## I.

■ The challenged administrative policy conforms to the terms and intent of the Medicare Act. The language of that statute reflects the Congressional policy that only the reasonable cost of medical services be used in computing benefit payments. Title 42, U.S.C. § 1395*l*, governs the computation of benefit payments. Section 1395*l* (a)(1) provides, in pertinent part, that

> . . . there shall be paid from the Federal Supplementary Medical Insurance Trust Fund, in the case of each individual who is covered under the insurance program established by this part and incurs expenses for services with respect to which

benefits are payable under this part, amounts equal to—(1) . . . 80 percent of the reasonable charges for the services[.]

Section 1395x(v)(1)(A) then defines the concept of "reasonable" charges, or costs, as follows:

> The reasonable cost of any services shall be the cost actually incurred, excluding therefrom any part of incurred cost found to be unnecessary in the efficient delivery of needed health services, and shall be determined in accordance with regulations establishing the method or methods to be used, and the items to be included, in determining such costs for various types or classes of institutions, agencies, and services[.]

Section 1395u(b)(3) provides guidance to the Secretary regarding the drafting of the required regulations: "In determining the reasonable charge for services for purposes of this paragraph, there shall be taken into consideration the customary charges for similar services generally made by the physician or other person furnishing such services, as well as the prevailing charges in the locality for similar services." The regulations which the Secretary has promulgated pursuant to these Congressional guidelines are set forth at 42 C.F.R. §§ 402.501–405.-511 (definitions of, and criteria for, "reasonable charges").

Having made clear, in § 1395*l*(a), that benefits are to be paid according to reasonable costs only, Congress then provided, in § 1395*l*(b), for the payment of a deductible by the recipients of Medicare Part B benefits. This deductible provision, 42 U.S.C. § 1395*l*(b), states, in pertinent part, that

> [b]efore applying subsection (a) of this section [42 U.S.C. § 1395*l*(a)] with respect to expenses incurred by an individual during any calendar year, *the total amount of the expenses incurred* by such individual during such year (*which would, except for this subsection, constitute incurred expenses from which benefits payable under subsection (a) of this section*

services." *Id.* The question of judicial review of particular benefit determinations is not now before this court, and the court expresses no view on that question.

*are determinable*) shall be reduced by a deductible of $60 ....

(emphasis supplied).

When the various elements of this statutory framework are combined, it becomes apparent that only reasonable charges are to be used in computing both the deductible and the recipient's net benefit payment. The $60 deductible is, of course, an expense actually "incurred" by the recipient in acquiring medical services. Section 1395*l*(b) indicates that "incurred expenses" are to be the expenses "from which benefits payable under subsection (a) of this section are determinable ...."[7] Sections 1395*l*(a)(1) and 1395x(v)(1)(A), in turn, provide that, at least for purposes of determining benefits under Part B of the Medicare program, "incurred expenses" are to mean "reasonable costs" only. Thus it follows that the $60 deductible, which is itself an "incurred expense," must also be subject to the "reasonable cost" limitation.

This construction of the statutory language is consistent with the Congressional intent reflected in the Medicare Act. In establishing its guidelines for the determination of "reasonable" charges, 42 U.S.C. § 1395u(b)(3), Congress clearly states two policy goals. First, the reimbursable charges for medical services are to be based on the "customary charges for similar services generally made by the physician ...." Second, those charges are to be based on "the prevailing charges in the locality for similar services." Thus, in imposing the reasonable cost requirement, Congress sought to ensure that Medicare recipients would be billed, and reimbursed, at similar rates for similar services.

Were the Secretary not to apply the reasonable cost limitation to the deductible, however, this Congressional goal of uniform reimbursement would be undermined. Thus plaintiffs propose that the Secretary compute the deductible from the recipient's actual costs, rather than from his reasonable costs. The distorting effects which would be caused by such a scheme can be illustrated by a simple example.

Assume, *arguendo*, that two persons—Recipients X and Y—both of whom are otherwise eligible for Medicare Part B benefits, require only one medical procedure in a year. Assume further that both persons receive the same services, but that Recipient X is charged $60 for the work, while Recipient Y is charged only $40 for those same services. Assume, finally, that the reasonable cost for the services received by both Recipients X and Y is, as determined by the Secretary, only $40.

If plaintiffs' proposal were applied to these facts, Recipient X, who had paid actual medical expenses of $60, would satisfy the deductible requirement, and would thereafter become entitled to Medicare Part B reimbursement. In contrast, Recipient Y, who had paid only the reasonable charge of $40, would not have satisfied the deductible, and thus would not be so entitled. Application of the Secretary's policy would, of course, lead to a different result. Under the Secretary's policy, because the reasonable charge for the services is only $40, neither Recipient X nor Recipient Y would satisfy the deductible requirement, and thus neither person would at that point be entitled to Medicare Part B reimbursement.

There would be some kind of symmetry to plaintiffs' proposed arrangement; only

---

7. In other words, Congress intended that, when computing benefit payments under §§ 1395*l*(a) and 1395*l*(b), the Secretary was to consider only "incurred expenses," as that term is defined in §§ 1395*l*(a) and 1395x(v)(1)(A). This point is clarified by the legislative history of the Medicare Act. In discussing the payment of benefits for the treatment of psychiatric disorders under Part B of the Medicare program, the Senate Report states:

During any year, a maximum of $312.50 or 62½ percent of the expenses involved, which-ever is smaller, would be considered *incurred expenses—that is, expenses used in calculating benefit payments.*

(emphasis supplied).

*See* S.Rep.No.404, 89th Cong., 1st Sess. (June 30, 1965), *reprinted in* [1965] *U.S.Code Cong. & Ad.News* 1943, 1983. This language from the Senate Report reiterates the key point that Medicare benefits are to be calculated on the basis of "incurred expenses," which under 42 U.S.C. §§ 1395*l*(a) and 1395x(v)(1)(A) are the "reasonable costs" of medical services.

the recipient who had borne the higher actual expense would be entitled to Medicare Part B benefits for that year. At the same time, this apparently symmetrical system would shatter the Congressional goal of uniform charges and payments. In particular, plaintiffs' proposed scheme would destroy the incentives against overcharging which Congress has devised and the Secretary has implemented. Under plaintiffs' proposal, a patient would be more likely to satisfy the deductible requirement, and thus to receive Medicare Part B reimbursement, if he were charged at an unreasonably high rate, rather than at the reasonable rate determined by the Secretary. If physicians knew that their patients were more likely to receive Medicare Part B benefits if they were to charge those patients at *high* rates, the physicians would not be under the same pressure to conform their charges to prevailing rates as the existing Medicare Part B system requires.[8]

Having reviewed (1) the terms of the Medicare Act, (2) the Congressional intent which is reflected in the statute and in its legislative history, and (3) the impact which the plaintiffs' proposed scheme would have on the policy aims of the statute, the court finds no basis for concluding that the challenged administrative policy violates the Medicare Act. In the absence of "compelling indications" that the Secretary's policy on the deductible is wrong, the court adheres to the "venerable principle that the construction of a statute by those charged with its execution should be followed ... especially when Congress has refused to alter the administrative construction." *Red Lion Broadcasting Co. v. FCC*, 395 U.S. 367, 381, 89 S.Ct. 1794, 1802, 23 L.Ed.2d 371 (1969) (footnotes omitted); *see also Miller v. Youakim*, 440 U.S. 125, 144–145 n.25, 99 S.Ct. 957, 969 n.25, 59 L.Ed.2d 194 (1979).

## II.

Plaintiffs' remaining statutory claim is that the predecessor agency of the Department of Health and Human Services failed properly to publish provisions of the *Manual* in which it set forth its policies and practices regarding the deductible under the Medicare Part B program, in violation of the notice and hearing requirements of the Administrative Procedure Act ("APA"), 5 U.S.C. § 552(a)(1)(D).

The provisions of the APA regarding notice and hearing requirements are not applicable to matters "relating to ... public ... benefits." 5 U.S.C. § 553(a)(2). In 1971, the predecessor agency of the Department of Health and Human Services voluntarily waived the benefits of this exception, *see* 36 Fed.Reg. 2532 (1971); *Humana of South Carolina, Inc. v. Califano*, 590 F.2d 1070, 1084 & n.103 (D.C.Cir. 1978). However, it is not contested that the relevant provisions of the *Manual* were issued by the Secretary of the Department of Health, Education & Welfare in July 1966, five years before the Secretary's waiver of the benefits of the exception. *See* Exhibit B to Defendant's Memorandum in Opposition to Plaintiffs' Memorandum, filed September 8, 1980. Here, as in *Humana*, "the regulation challenged ... was issued in 1966, and consequently was not dependent for its effectiveness upon the Secretary's adherence to the [APA's] commands." *Humana of South Carolina, Inc. v. Califano, supra*, 590 F.2d at 1084.

Even if the so-called "benefits exception" were not available to the Secretary in this case, the court notes (without deciding) that the notice and hearing requirements of the APA may not be applicable to these provisions of the *Manual* because the provisions arguably are "interpretive rules," or possi-

---

**8.** At pages 6 through 8 of his memorandum in support of his motion for summary judgment, the Secretary provides several hypotheticals. These examples demonstrate convincingly that, when computing net reimbursements under the Medicare Part B program, a reasonable charge limitation is needed in order to preserve the Congressional goal of uniform charges and pay-

ments. The Secretary's hypotheticals do not appear, however, to address the precise claim made by plaintiffs in the Complaint—namely, that the reasonable charge limitation, *when used in computing the deductible*, somehow violates the terms or intent of the Medicare Act.

bly even "general statements of policy," as those terms are used in 5 U.S.C. § 553(b)(A) (notice and hearing requirements of APA not applicable to "interpretive rules, general statements of policy, or rules of agency organization, procedure, or practice"). *See generally Noel v. Chapman*, 508 F.2d 1023, 1029–1030 (2d Cir. 1975); *Schupak v. Califano*, 454 F.Supp. 105, 115 (E.D.N.Y.1978); *Continental Oil Company v. Burns*, 317 F.Supp. 194, 196–198 (D.Del.1970).

## III.

Plaintiffs also claim that they have been deprived of rights guaranteed to them by the Due Process Clause of the Fifth Amendment to the Constitution because "[d]efendant's policy and practice of applying the Medicare-approved 'reasonable charge' for physicians' services towards a beneficiary's annual deductible, rather than applying the amount of actual expenses incurred, result[s] in the deprivation of a property right through the denial of or reduction of Medicare Part B benefit payments. . . ." Complaint ¶ 20. As thus stated in the complaint, plaintiffs appear to assert that the Secretary's policy and practice concerning the $60 deductible, even if authorized by statute, violate the Due Process Clause. No authority for any such proposition has been brought to the attention of the court. In any event, legislation conferring monetary benefits is granted a "strong presumption of constitutionality," *Schweicker v. Wilson*, —— U.S. ——, ——, 101 S.Ct. 1074, 1085, 67 L.Ed.2d 186 (1981), *quoting Mathews v. De Castro*, 429 U.S. 181, 185, 97 S.Ct. 431, 434, 50 L.Ed.2d 389 (1976), because "Congress should have discretion in deciding how to expend necessarily limited resources," *Id. See also, e. g., Califano v. Torres*, 435 U.S. 1, 5, 98 S.Ct. 906, 908, 55 L.Ed.2d 65 (1978).

In a reply memorandum on the issue of jurisdiction, plaintiffs appear to add to the substantive due process claim stated in their complaint, in sketchy and conclusory terms, allegations of due process violations involving matters of procedure. Plaintiffs are said to have been deprived of rights guaranteed by the Due Process Clause because in a case involving a claim of less than $100 their appeal rights are "limited . . . to an in-house paper 'review.'" Plaintiffs' Reply Memorandum at 3 (May 9, 1980); *see* 42 C.F.R. §§ 405.807, 405.820. The gravamen of their claim appears to be that the amount-in-controversy requirement of the statute and regulations, under which "a fair hearing by the carrier" is available "if the amount in controversy is $100 or more . . .," 42 U.S.C. 1395u(b)(3)(C); 42 C.F.R. § 405.820(a), deprives the plaintiffs—whose claims fall below that dollar threshold—of their constitutional right to due process of law.

There is reason to believe that the real target of plaintiffs' belated procedural due process claim is, in fact, the substance of the Secretary's policy on the computation of the Medicare Part B deductible. For example, plaintiffs argue that "even if [they] had a right to a hearing before a carrier-appointed hearing officer, that hearing officer is bound to apply the [deductible] policy challenged herein"; that they are thus assertedly "left without an effective right of appeal"; and that the deprivation of their "property interest in Medicare benefits without protection (sic) goes to [the] heart and design of the Fifth Amendment to the United States Constitution." Plaintiffs' Reply Memorandum at 3 (May 9, 1980).

Having reviewed the pleadings in this case, the court finds that the complaint contains no factual allegations of a denial of procedural due process and no claim for relief based upon any such denial. Accordingly, any argument which may belatedly have been raised by plaintiffs in the reply memorandum on jurisdiction is not properly before the court and cannot be considered as falling within the scope of any of the pending motions for summary judgment.

At least one other appellate court has addressed the question of whether the Due Process Clause requires an oral evidentiary hearing for routine claims which seek greater reimbursement (but of less than $100), or whether something less than that would provide an "opportunity to be heard

'at a meaningful time and in a meaningful manner,'" *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976), *quoting Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965). Both sides of that question were recently the subject of exhaustive treatment by, what was, for a time, a sharply divided panel of the United States Court of Appeals for the District of Columbia Circuit. *Gray Panthers v. Schweiker*, 652 F.2d 146 (D.C.Cir. 1980), *rehearing granted and vacated* (March 18, 1981), *new opinion issued* (March 18, 1981). Inasmuch as this issue is not presented here, this court intimates no view concerning the persuasiveness of any of the various appellate opinions in the *Gray Panthers* case, or on the applicability of any of them within the Second Circuit. *See generally* Friendly, "*Some Kind of Hearing*," 123 U.Pa.L.Rev. 1267 (1975).[9]

### CONCLUSION

The court finds that the policy concerning the computation of the Medicare Part B deductible, adopted and applied by the Secretary and his predecessors, does not violate either the Medicare Act or the APA. The court also finds that the Secretary's policy on the deductible does not violate the Due Process Clause of the Fifth Amendment of the United States Constitution. By adopting and implementing the challenged regulations on the Medicare Part B deductible, therefore, the Secretary did not fail to discharge a duty that Congress or the Constitution intended him to perform. Accordingly, there is no need for the court to compel any performance by the Secretary in order to effectuate the purpose of any Congressional or constitutional mandate.

Plaintiffs' motion for partial summary judgment is denied and the defendant's motion for summary judgment is granted. Under the circumstances, the court need not reach any of the questions raised by the parties regarding the certification of a class.

---

**9.** To the extent that a procedural due process claim constitutes "an attack on procedures of the Secretary ... which operate prior to the time that any decision to deny or to approve a claim is reached," judicial review is available. *Ellis v. Blum, supra,* 643 F.2d at 82 n.15. *See* note 6, *supra,* and accompanying text.